**UNITED STATES of America, Appellee,**

v.

**Humberto CERVANTES, Defendant–Appellant.**

**No. 120, Docket 89–1002.**

United States Court of Appeals, Second Circuit.

Argued May 1, 1989.

Decided June 14, 1989.

Helen Coady, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for defendant-appellant.

Emily Berger, Asst. U.S. Atty., New York City (Andrew J. Maloney, U.S. Atty. E.D.N.Y., Jacques Semmelman, Asst. U.S. Atty., of counsel), for appellee.

Before KAUFMAN, FEINBERG, and NEWMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

This case raises important issues regarding the procedure for departing upwards from the sentencing range set forth in the United States Sentencing Guidelines. We must determine what is required for a divergence based upon the defendant's prior criminal history. The record indicates that the district court did not adequately articulate the grounds for the enhanced sentence, failed to perform the mandatory § 4A1.3 analysis, and, by stating an intention to sentence within the Guidelines but subsequently departing, did not afford defense counsel proper notice and opportunity to be heard. Accordingly, we vacate and remand for resentencing.

Appellant Humberto Cervantes, a 29-year–old native of Cuba, came to the United States in 1980. He subsequently secured an Alien Registration Receipt Card (commonly known as a "Green Card") and, from 1982 to 1987, allegedly worked as a partner and manager of his mother's small sewing business in Miami, Florida. He then moved to Caracas, Venezuela where he managed a night club for almost a year before returning to the United States.

On the afternoon of July 17, 1988, Cervantes disembarked from a Caracas flight at Kennedy Airport. A Customs Officer arrested him after examining his luggage and discovering a white powdery substance. It was determined that he possessed 1,685 grams of 74% pure cocaine, which was hidden under the soles of four pairs of shoes. Indicted for importing, as well as possessing with intent to distribute, over 500 grams of cocaine, Cervantes pleaded guilty to a one count superseding information that charged importation in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(F).

In a plea agreement, Cervantes and the Government stipulated that 33–41 months represented the appropriate sentencing range pursuant to the United States Sentencing Guidelines ("Guidelines"). The presentence report of the probation officer independently reached a similar conclusion.

The report indicated that conviction under 21 U.S.C. § 952(a) yields a base offense level of 26. Guidelines § 2D1.1(a)(3). Cervantes received a four level reduction because he was "recruited as a courier for a single smuggling transaction." *Id.*, Commentary to § 3B1.2(a). Thus, his participation in the apparently larger criminal activity was deemed "minimal." *Id.* § 3B1.2(a). An additional two level downward adjustment for Acceptance of Responsibility, *id.* § 3E1.1(a), resulted in a total offense level of 20. At the other axis of the Sentencing Table, Cervantes's lack of previous convictions placed him in Criminal History Category I. At the intersection of level 20 and Category I is the agreed upon range of 33–41 months.

The presentence report also indicated Cervantes's involvement in "other criminal conduct." On February 18, 1981, police in Illinois arrested him for stealing meat from a grocery store. In connection with this offense, Cervantes forfeited an unspecified bond on March 4, 1981, and another in the sum of $1,500 several months later. These

charges may no longer be pending; Illinois records do not reveal outstanding warrants.

Four years later, Cervantes was arrested for Obstruction of Justice and Resisting Arrest Without Violence in Key Biscayne, Florida. The presentence report did not contain any information on these charges, other than the posting of a $500 bond after Cervantes's arrest on a bench warrant.

On January 23, 1987, the Florida Circuit Court for Dade County issued a warrant against appellant for passing a worthless check. Cervantes was also named by the Southern District of Florida in a July 10, 1987 indictment for obtaining approximately $20,000 from a bank by submitting counterfeit credit card sales drafts. No arrests were made on either charge.

Finally, while awaiting sentencing on the importation charge, Cervantes was indicted in the Southern District of New York for conspiracy and attempted escape after he and two other inmates tried to break out of the Metropolitan Correctional Center by sawing through a barred window.

In its conclusion, the report noted that the case involved factors that would, in the exercise of the judge's discretion, warrant either an upward or a downward departure from the applicable sentencing range. Cooperation with the Government would permit a reduction upon motion of the United States. Either the Illinois bail jumping or the commission of the offense while pending trial on the obstruction charge constituted grounds for an upward departure under § 4A1.3 of the Guidelines.

The December 16, 1988 sentencing hearing before Chief Judge Platt began with an extended sidebar conference. Defense counsel argued that the court should sentence the defendant without regard to the escape attempt, which would be dealt with separately in the Southern District of New York. Counsel then mentioned Cervantes's cooperation with the government, to which the court replied, in an apparent reference to the escape attempt, "you call that cooperation?" The sidebar concluded with the court stating, "Why don't you consider all those factors and counsel each other and I will impose a sentence within the Guidelines."

After a brief declaration by Cervantes, the Government declined to make a specific sentencing recommendation and the defense addressed the court on the defendant's background, community and family ties, and employment history. Chief Judge Platt responded:

This is a pretty bad record. A man has jumped bail, went to Florida; quite apart from what is happening in the Southern District, which I will just pass over. I think an upward departure is warranted.

He then sentenced Cervantes to 60 months in prison, 5 years of supervised release, and a mandatory $50 assessment.

In design, the formulae through which the Guidelines instruct judges to devise sentences represents an accommodation between two competing philosophies of sentencing. In its early thinking, the United States Sentencing Commission ("Commission") leaned toward a "real offense" system—one that correlates punishment to the specific facts of every case. Unlike a "charge offense" system, which links the penalty to the statutory definition of the crime of conviction, a real offense system would allow judges to tailor sentences based upon the actual facts of each incident, thus recognizing that like crimes may be committed differently. As its deliberations progressed, the Commission determined that a charge system with real elements best suited its goals. *See United States v. Guerrero*, 863 F.2d 245, 248 (2d Cir.1988).

The Commission adopted this hybrid approach in an attempt to avoid the flaws inherent in a pure version of either theory. Absent sentencing statutes that reflect such varied factors as amount of money involved, cruelty, or vulnerability of the victim, the charge system often fails to respond adequately to particular crimes. While a real offense system remedies this shortcoming, it requires an unwieldy post-trial factfinding that often occurs without the procedural protections of a trial. As described by Judge Breyer, a member of the Commission, the "compromised" Guide-

lines Manual "looks to the offense *charged* to secure the 'base offense level.' It then modifies that level in light of several 'real' aggravating or mitigating factors, (listed under each separate crime), several 'real' general adjustments ('role in the offense,' for example) and several 'real' characteristics of the offender, related to past record." Breyer, *The Federal Sentencing Guidelines and the Key Compromises upon Which They Rest*, 17 Hofstra L.Rev. 1, 11–12 (1988) (footnotes omitted) (hereinafter "Key Compromises").

Consistent with this purpose, the Sentencing Reform Act of 1984, as amended, permits the district court to select a sentence outside the applicable Guidelines range if it finds "an aggravating or mitigating circumstance, of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (Supp. V 1987). The Guidelines address the particular grounds for a departure in two distinct provisions. In most instances, § 5K2 is the principal policy statement dealing with the parameters of a divergence because it offers, *inter alia,* an extended discussion of those factors the Commission expressly considered. As discussed below, however, where a departure involves prior criminal history, § 4A1 primarily controls.

We have already noted and endorsed the " 'wide discretion' accorded district courts in determining what circumstances to consider in deciding whether to depart from the Guidelines" under § 5K2.0. *United States v. Sturgis,* 869 F.2d 54, 56 (2d Cir. 1989) (quoting *United States v. Correa–Vargas,* 860 F.2d 35, 37 (2d Cir.1988)). The Government urges us to affirm Cervantes's

sentence under this section, asserting that the departure was based upon an inadequately considered factor: a "penchant for avoiding the criminal justice system." Even if it were clear—and from the record it is not—that Chief Judge Platt relied upon this factor, bail jumping and other related unlawful acts constitute prior criminal history within the purview of § 4A1. Therefore, we now turn to the Commission's treatment of that topic.

After extended debate and compromise, the Commission devised a system for calculating the Criminal History Category that parallels the criteria adopted by the United States Parole Commission to determine early release. For a detailed comparison, *see* Breyer, *Key Compromises,* 17 Hofstra L.Rev. at 18–20 & n. 97. Essentially, the Guidelines require the court to examine prior behavior and assess points that reflect the "frequency, recency, and seriousness of past crimes," *id.* at 20, to arrive at the appropriate Criminal History Category. The five criteria are set forth in § 4A1.1 of the Guidelines. If reliable information indicates that the calculus "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes," the court may depart from the Guidelines. Guidelines § 4A1.3 at 4.8.

A precise procedure regulates the exercise of discretion in making this type of departure. In keeping with the mandate of rationalizing the sentencing process, the Guidelines require a judge to 1) determine which category best encompasses the defendant's prior history, and 2) use the corresponding sentencing range for that category "to guide its departure." *Id.* § 4A1.3 at 4.9.[1]

---

**1.** In relevant part, § 4A1.3 states:

In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with a Category IV criminal history, the court should

look to the guideline range specified for a defendant with a Category IV criminal history to guide its departure. The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted.

Guidelines § 4A1.3, at 4.9.

The Government contends application of the § 4A1.3 analysis is not mandatory because the Commission, "in suggesting this approach, merely state[d] that ... a court should use [the most representative criminal history category] *as a reference....*'" This characterization distorts the intent of the Commission. The phrase "as a reference" is designed to order and standardize the departure process without removing a judge's discretion to impose an alternative sentence. For example, while § 4A1.3 expressly states that a judge may impose a sentence beyond the highest possible guideline range, before doing so, the court must consider Category VI. To construe this section as purely discretionary would ignore the principles that support the Commission's mission.

Moreover, consistent with the congressional goal of "avoiding unwarranted sentencing disparities," 28 U.S.C. § 991(b)(1)(B) (Supp. V 1987), a sentencing judge must articulate the grounds for any departure. Congress intended that the most detailed explanation be set forth for a sentence beyond the boundary of the Guideline range. *Compare* 18 U.S.C. § 3553(c)(1) (Supp. V 1987) (requiring expression of "the reason" for imposing a particular sentence within a guideline range of 24 or more months) *with* 18 U.S.C. § 3553(c)(2) (Supp. V 1987) (judge must state "the specific reason" for departing from the applicable range). The rule is also designed to facilitate appellate review of sentencing decisions. *See* 18 U.S.C. § 3742 (Supp. V 1987).

We believe that the district court should explicitly articulate its reasons for departing pursuant to § 4A1.3. Failure to do so renders the sentence unlawful under 18 U.S.C. § 3742(d)(1) (Supp. V 1987). Of course, we do not require sentencing judges to "incant the specific language" used in the Guidelines. *See United States v. DeLuna-Trujillo*, 868 F.2d 122, 124 (5th Cir.1989). It is necessary, however, that the court clearly identify any aggravating factors and specify its reasons for utilizing a particular criminal history category. In this way, a district court's initial assessment will clarify the methodology for appellate review by this court, which assesses the reasonableness of the departure, *see* 18 U.S.C. § 3742(d)(3) (Supp. V 1987), by ascertaining whether the enhanced or reduced sentence corresponds to the alternate criminal history category. *Cf. United States v. Sturgis*, 869 F.2d 54 (2d Cir.1989). We would suggest that only especially aggravating circumstances fully articulated by the judge warrant significant departures.

In the instant case, Chief Judge Platt selected a sentence that would have been appropriate only if Cervantes's prior record justified an increase of three criminal history categories. Due to the lack of prior convictions, the presentence report and plea agreement appropriately placed the defendant in Category I. The departure to a 60 month term of imprisonment—from an initial range of 33–41 months—can only be supported by placing Cervantes in Criminal History Category IV. The district court's cryptic statement regarding this departure does not satisfy the congressional requirement that specific reason or reasons be cited. The failure even to attempt a minimal version of the detailed process prescribed by § 4A1.3 compounds the problem and renders the sentence unlawful under 18 U.S.C. § 3742(d)(1) (Supp. V 1987).

The record, which indicates that the chief judge imposed the sentence because of the bail jumping and the conclusion that the appellant had a "pretty bad record," leaves us with the impression that the Chief Judge departed upwards without any consideration of § 4A1.3. No mention of this section was made. Nor was an explanation offered for selecting a sentence appropriate for a defendant in Category IV rather than Category II or III. The Fifth Circuit has vacated a sentence and remanded because of this failure. *See United States v. Lopez*, 871 F.2d 513 (5th Cir.1989). Indeed, part of the rationale for requiring a clear articulation of the grounds for departure is illustrated by our inability to discern rea-

sons for such a significant deviation on the record before us.

The departure might have been influenced by any of three considerations, but not all of them may validly be relied upon. One possibility is that the district court relied upon Cervantes's prior arrest record. The reference to the "pretty bad record" suggests that this occurred. However, the Guidelines explicitly reject this factor. Section 4A1.3 states, "[A] prior arrest record itself shall not be considered...." Guidelines § 4A1.3, at 4.9.

The bail-jumping incident is referred to as another basis for departure. Both the presentence report and Chief Judge Platt refer only to the Illinois episodes, the most serious of which involved forfeiture of a $1,500 bond. The Guidelines do not specifically indicate whether bail-jumping that occurred prior to the current offense may be a basis for an upward departure. But, § 4A1.3 does permit the court to depart on the basis of "prior *similar* adult criminal conduct not resulting in a criminal conviction." *Id.* § 4A1.3, at 4.9 (emphasis added). Of course, bond forfeiture bears no resemblance to importing cocaine, the crime charged here. While the reference to like conduct raises the question whether the Commission chose to preclude departures because of prior non-similar acts, we are of the view that § 4A1.3 bars this interpretation. The 5 enumerated factors in the policy statement are not all inclusive. Indeed, the Guidelines state that a judge's consideration "may include, but is not limited to" the 5 elements. *Id.* § 4A1.3, at 4.8.

A sentencing judge may therefore consider bail-jumping as a ground for departure, provided the judge does so within the framework of § 4A1.3. In this case, however, assuming that both incidents were deemed relevant, they would probably account for no more than two or three Crimi-

nal History points, which would result in a shift from Category I to II and a sentencing range of only 37–46 months. *See id.* § 4A1.1(b) & (c).

Additionally, § 4A1.3 permits a departure if "the defendant was pending trial ... at the time of the instant offense." The Florida fraud indictment was pending when Cervantes was arrested for smuggling cocaine.[2] No factor in § 4A1.1, however, is precisely applicable here to determine how much of an increase in the criminal history category is appropriate for committing the crime while other charges are pending. The most analogous, § 4A1.1(d), adds two points when the crime was committed while under "any criminal justice sentence." Nevertheless, Cervantes would then only reach Category II. And, even if both grounds were considered (bail-jumping and committing a crime while other charges are pending), resulting in 5 additional points and a Category III classification, the corresponding sentencing range would have been 41–51 months.[3]

Once the sentencing judge has applied § 4A1.3 and concluded, with justification, that an upward departure to a more serious criminal history category is appropriate, there may remain in some limited circumstances discretion to depart further and select a sentence above even the range for the enhanced criminal history category. But only the most compelling circumstances—for example, prior misconduct accompanied by accompanied by wanton cruelty —would justify such an extra departure. The present case discloses no circumstances that cannot be adequately reflected by an increase to an appropriate criminal history category.

■ Finally, this case raises serious concerns about notice and the defendant's meaningful opportunity to be heard. The

---

2. The presentence report incorrectly stated that the obstruction of justice charge was relevant here.

3. Cumulating points for bail-forfeiture and for committing a crime while other charges are pending is permissible here because the other pending charges are not the ones involved in the bail-forfeiture. Since refraining from criminal conduct is generally a condition of bail, it would be double counting to add points both because the crime was committed while charges were pending and because the conduct underlying those charges constituted a violation of the conditions of bail granted with respect to those charges.

**56**

presentence report must be disclosed to the defendant at least ten days prior to sentencing. 18 U.S.C. § 3552(d) (Supp. V 1987). As amended in 1983, Federal Rule of Criminal Procedure 32 required disclosure within "a reasonable time" before sentencing and an opportunity for defense counsel to comment upon the probation officer's determinations. Fed.R.Crim.Pro. 32(a)(1) & (c)(3)(A). Primarily, these changes sought to "ensure accuracy of sentencing information." Advisory Committee Notes of the 1983 amendment to Rule 32(c)(3)(A), (B), & (C).

This rationale also applies to the grounds for an upward departure, especially where the judge relies upon factors not addressed in the presentence report or which, if mentioned, have been recast by the judge. Indeed, the language of Rule 32(a)(1) provides for consideration of these matters: "At the sentencing hearing, the court shall afford counsel ... an opportunity to comment upon the probation officer's determination *and on other matters relating to the appropriate sentence.*" Fed.R.Crim. Pro. 32(a)(1) (emphasis added). *See United States v. Otero,* 868 F.2d 1412, 1415 (5th Cir.1989).

In this case, defense counsel may have been lulled into a false sense of security by the judge's remark, at the conclusion of the sidebar before the sentencing hearing commenced, that he would impose a sentence "in the guidelines." When the district court departed from the Guidelines, the defense may have been deprived of any opportunity to present arguments concerning the departure. To the extent the court then relied upon matters not mentioned in the report, or not highlighted in a fashion that would clearly convey their significance to defense counsel, he compounded the problem.

We have reviewed appellant's other arguments and find them meritless. We vacate the sentence and remand for resentencing.