**UNITED STATES of America**

v.

**Edward E. LANDAW, Jr.**

**No. SCr. 88–84.**

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 26, 1990.

**1258**

Rick L. Jancha and William T. Grimmer, Asst. U.S. Attys., South Bend, Ind., for plaintiff.

Alan Blumenthal, Chicago, Ill., for defendant.

### SENTENCING MEMORANDUM

MILLER, District Judge.

Edward Landaw has been found guilty of possessing a firearm as a felon. 18 U.S.C. § 922(g)(1). On October 21, 1988, two semi-automatic handguns were found during the execution of a search warrant at Mr. Landaw's residence; a jury concluded that Mr. Landaw knowingly possessed those guns. Because the offense occurred after November 1, 1987, the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984 govern this case. *United States v. Johnson*, 889 F.2d 1032 (11th Cir.1989); *United States v. Miller*, 874 F.2d 466, 467 n. 1 (7th Cir.1989). The court earlier denied the government's motion to enhance the sentence pursuant to 18 U.S.C. § 924(e)(1) because a review of the underlying facts disclosed that Mr. Landaw's prior burglary was not a "crime of violence". *United States v. Landaw*,

727 F.Supp. 481 (N.D.Ind.1989); *cf. United States v. Dombrowksi*, 877 F.2d 520 (7th Cir.1989). Accordingly, the offense is punishable by imprisonment for as long as five years, 18 U.S.C. § 924(a)(1), and/or a fine of as much as $250,000.00. 18 U.S.C. § 3623.

A presentence report was prepared and submitted to both sides for objection. The presentence report calculated the sentencing range in two ways. Under the post-November 1, 1989 version of the Guidelines, the range was calculated to be twenty-one to twenty-seven months; under the pre-November 1, 1989 version of the Guidelines, the range was calculated at twelve to eighteen months. The presentence report's determination of the sentencing ranges was based on an adjusted offense level of 11 and the assessment of six criminal history points, placing Mr. Landaw in criminal history category III. The presentence report discussed the possibilities of consecutive sentencing and departure under § 4A1.3 of the Guidelines. *See United States v. Mendoza*, 890 F.2d 176 (9th Cir.1989).

The defense submitted untimely objections to the report. Although the court's standing order on sentencing procedures would empower the court to view the objections as waived, the court will, in the exercise of its discretion, address the four objections:

1. Mr. Landaw argues that he should be sentenced under the pre-November 1, 1989 version of the Guidelines. The probation officer took no position on this issue and, as noted above, calculated alternative guideline ranges under both versions.

2. The presentence report's calculation of the offense level included a two-level increase for obstruction of justice. Mr. Landaw contends that such an increase is inappropriate.

3. The presentence report identified as a possible ground for departure § 4A1.3 of the United States Sentencing Guidelines ("U.S.S.G."), which allows use of a higher criminal history category if the defendant's criminal history category does not adequately reflect the serious-

ness of the defendant's criminal record. Mr. Landaw contends that such a "departure" would be inappropriate.

4. The presentence report took the position that the court has discretion to determine whether the sentence should be consecutive to, or concurrent with, the result of any parole violation. Mr. Landaw maintains that the sentence must be concurrent under the pre-November 1, 1989 version of the Guidelines.

The court adopts as its own findings the factual content of the presentence report, except with respect to obstruction under U.S.S.G. § 3C1.1 and as to the adequacy of Mr. Landaw's criminal history category under U.S.S.G. § 4A1.3, as to which the court makes its own findings.

At the sentencing hearing, the government also raised a new issue, requesting an upward departure equivalent to two offense levels due to Mr. Landaw's history of drug abuse.

### A. Applicability of November 1, 1989 Amendments

■ The court agrees with the defense (as does the government) that the pre-November, 1989 version of the Guidelines must be applied. In *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), the Supreme Court held that a law addressing criminal punishment violates the constitutional prohibition against *ex post facto* laws if the law is intended to apply retroactively and the new law provides harsher penalties than did the law in effect at the time of the crime. Both prongs of the test are satisfied here. The November 1, 1989 amendments to the Guidelines are intended to apply to crimes committed before their effective date, pursuant to the Congressional directive that courts apply the Guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4). Under the version of the Guidelines in effect at the time of the offense and trial, the base offense level for a felon's possession of a firearm is 9; under the present version, the base offense level is 12.

Accordingly, the court shall apply the pre-amendment version of the Guidelines.

### B. Offense Level
#### 1. Obstruction of Justice

■ As noted above, the base offense level for a felon's possession of a firearm is 9. U.S.S.G. § 2K2.1. At issue is the two-level increase in offense level provided by U.S.S.G. § 3C1.1:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

The government claims that this enhancement is warranted because Mr. Landaw threatened government witnesses Linette Moss and John Nickelson to get them to withhold evidence and to provide false testimony, and used Michael Lennick to tape a false exculpatory telephone conversation between Mr. Landaw and Ms. Moss. Mr. Landaw argues that Ms. Moss testified that she was unafraid of him and that Ms. Moss initiated the taped telephone call, which he contends was not false or intended to obstruct justice.

■ Section 3C1.1 does not require that the defendant have threatened witnesses, or that a witness be in fear of the defendant. An attempt to impede or obstruct justice is all that is required. *United States v. Patterson*, 890 F.2d 69 (8th Cir. 1989). Accordingly, Ms. Moss' fear of Mr. Landaw is immaterial. The inquiry focuses on Mr. Landaw's efforts. Mr. Landaw attempted to impede or obstruct justice.

■ A sentencing court may consider evidence presented at trial, at least where the defendant has had an opportunity to meet and rebut the evidence. *See United States v. Monzon*, 869 F.2d 338, 346–347 (7th Cir.), *cert. denied* —— U.S. ——, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). Much of the evidence introduced at trial was "spoilation" evidence designed to demonstrate Mr. Landaw's consciousness of his guilt. That evidence leads the court to find that Mr. Landaw attempted to impede the administration of justice on least three occasions during the investigation and prosecution of the

instant offense, warranting a two-level increase.

First, the evidence at trial was sufficient to support an inference, and a finding by a preponderance of the evidence, *see United States v. Vinson,* 886 F.2d 740 (4th Cir. 1989), *cert. denied* —— U.S. ——, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990), that Mr. Landaw caused Michael Lennick to obtain a false receipt for the firearms from Lonnie Freshour. Second, well before trial, Mr. Landaw told Ms. Moss to say she had found the weapons in Dale Martin's property. Third, the tape recorded telephone call that was played at trial supports an inference, and a finding by a preponderance of the evidence, that on the eve of trial, Mr. Landaw tried to get Ms. Moss to testify falsely concerning the ownership of the firearms.

The court does not rely on the proposition that Mr. Landaw threatened Ms. Moss; evidence at trial was ambiguous as to whether or how he threatened her. Even apart from threats, however, the facts set forth above are more than ample to support a finding that Mr. Landaw attempted to impede or obstruct the administration of justice during the investigation and prosecution of this offense. Mr. Landaw's adjusted offense level is 11.

### 2. Drug Usage

■ The government, relying on the Sentencing Commission's finding of a high correlation between substance abuse and an increased propensity to commit crimes, U.S.S.G. § 5H1.4, argues that the court should depart upward due to the likelihood that Mr. Landaw will commit crimes in the future. The government points to evidence suggesting a lengthy history of drug abuse by Mr. Landaw.

■ While neither Congress nor the Sentencing Commission intended to deprive courts of the "sensible flexibility" to depart from the guidelines in appropriate cases, *United States v. Jordan,* 890 F.2d 968, 972 (7th Cir.1989), the guidelines anticipate that departures will be rare. *United States v. Mendoza,* 890 F.2d 176, 180 (9th Cir.1989).

A sentencing court may not depart from the guidelines on the basis of a factor adequately considered by the Sentencing Commission. *United States v. Bolden,* 889 F.2d 1336 (4th Cir.1989); *United States v. Missick,* 875 F.2d 1294 (7th Cir.1989); *United States v. Donatiu,* 720 F.Supp. 619, 622–623 (N.D.Ill.1989). "It is only when the case falls outside the 'heartland' that departure comes into play.... Departure is permitted in those cases where idiosyncratic circumstances warrant individualization of sentence beyond that which is possible within the comparatively close-hewn parameters constructed by the guidelines." *United States v. Aguilar–Pena,* 887 F.2d 347, 349 (1st Cir.1989).

The provision upon which the government relies demonstrates that the Sentencing Commission adequately considered drug dependency as a potential basis for departure, whether upward or downward. The Commission noted the correlation between substance abuse and propensity to commit crimes, yet made no provision for enhancement based on drug abuse. The court concludes that drug dependency is a factor adequately considered by the Sentencing Commission; hence, the court cannot grant the government's request for an upward departure on that ground.

Mr. Landaw's adjusted offense level is 11.

### C. Criminal History Category; Under–Representation of Seriousness

■ Neither side disputes that six criminal history points are to be assessed against Mr. Landaw under the Guidelines. In 1972, he was convicted in this court of distribution of heroin and was sentenced to fifteen years imprisonment, to be followed by a three-year special parole term. His latest release on parole was in 1987. Three points are assessed for that conviction. U.S.S.G. § 4A1.1(a). Two additional points are assessed because he was on parole from that conviction when he committed the offense for which he is being sentenced. U.S.S.G. § 4A1.1(d). One addition-

al point[1] is assessed because he committed the offense of conviction less than two years after his release from custody in the heroin case. U.S.S.G. § 4A1.1(e).

Six criminal history points place Mr. Landaw in criminal history category III. U.S.S.G. Ch. 5 Pt. A. Section 4A1.3 of the Guidelines empowers the court to "depart" to a higher criminal history category if the defendant's category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that he will commit other crimes. The presentence report noted this ground for departure, although it did not recommend such departure. Mr. Landaw challenges its applicability.

Mr. Landaw has a considerable criminal history that, due to its age, see U.S.S.G. § 4A1.2(e), is not reflected in his criminal history category. Mr. Landaw was committed to the Indiana Boys School as a juvenile in the early 1960's; parole violations caused him to spend a considerable portion of two years in custody. In 1965, he was fined for disorderly conduct and interfering with a police officer.

In 1966, he was sentenced to six months imprisonment on two counts of contributing to the delinquency of a minor and was sentenced to ten days imprisonment on a separate charge of disorderly conduct and disobeying an officer's command. Also in 1966, Mr. Landaw received a six month sentence for resisting arrest, a charge arising from a scuffle as officers tried to serve a bench warrant for non-payment of a fine. In 1967, he pleaded guilty to a Michigan charge of breaking and entering, but the case ultimately was dismissed six years later.

In 1968, Mr. Landaw was sentenced to one-to-five years imprisonment (after amendment of the sentence) for entering to commit a felony. He was released on parole in December, 1969. In 1970, Mr. Landaw was convicted of involuntary manslaughter and sentenced to one-to-ten years imprisonment. He was paroled in July, 1972, and was on parole on this offense when he committed the heroin offense discussed above.

Difficulty in complying with laws has marked Mr. Landaw's performance since his heroin conviction, as well. Mr. Landaw was sentenced in the heroin case in 1973. Between 1973 and his first parole in March, 1984, he had approximately eight incident reports concerning possession of marijuana and similar related offenses. He was released on parole on March 9, 1984, but his parole was revoked less than eight months later, in part due to his failure to participate in a drug aftercare program and four urine tests that were positive for marijuana. He was paroled again in October, 1985, but his parole was revoked eight weeks later due to positive urine tests for marijuana and opiates. Following that revocation, he was sent to the federal correctional facility in Milan, Michigan, and was caught bringing marijuana into the institution.

Mr. Landaw was paroled most recently on May 17, 1987. Parole revocation charges pend as a result of his commission of this firearms offense, which occurred seventeen months later. At the time of his arrest in this case, hypodermic needles were found in his apartment under circumstances suggesting drug use. Mr. Landaw was found to have used cocaine while in custody awaiting trial in this case.

Accordingly, even setting aside Mr. Landaw's three six month prison sentences in 1966 and the convictions that occurred before that date, the record reveals that, even assuming no time in custody pending trials (other than this one) or parole revocation hearings, Mr. Landaw has spent all but forty-two months of the past twenty years in custody.

■ Mr. Landaw argues that his pre-1972 convictions cannot be considered under § 4A1.3, because the Sentencing Commission did not include aged convictions among the examples of situations in which

---

**1.** Two additional points would be assessed but for the assessment of two points under § 4A1.1(d).

departure would be appropriate. Case law is to the contrary. The examples set forth in § 4A1.3 are not intended to be exhaustive; other factors may be considered. *United States v. Cervantes*, 878 F.2d 50 (2nd Cir.1989). In *United States v. Spraggins*, 868 F.2d 1541 (11th Cir.1989), the court upheld the district court's decision to apply category IV rather than category I, based in part upon a prior conviction that was too old to be included in determining the defendant's category. Certainly, to apply higher categories in each case in which a defendant had convictions outside the Guidelines' time periods would be impermissible, because it would eradicate the time limits found in § 4A1.2(e). If such convictions lend sufficient support to a finding that the defendant's category seriously under-represents the likelihood of future criminal activity, however, it is proper to consider them.

▮ Further, a sentencing court may consider the seriousness of prior convictions for which criminal history points have been assessed. *United States v. De Luna-Trujillo*, 868 F.2d 122 (5th Cir.1989). Mr. Landaw's prior criminal history includes a homicide (for which no criminal history points are assessed) and a conviction for distributing heroin (which resulted in assessment of the same three points that would accompany a two year sentence for theft).

▮ A sentencing court may also consider, pursuant to § 4A1.3, the steady nature of the defendant's criminal activity, because such information bears upon the defendant's likelihood of engaging in future criminal activity. *United States v. Fisher*, 868 F.2d 128, 130 (5th Cir.), *cert. denied* — U.S. —, 110 S.Ct. 111, 107 L.Ed.2d 73 (1989). As noted above, Mr. Landaw has been in custody for his criminal conduct for most of the past twenty years and committed criminal acts even while in custody. A court also may consider the defendant's past record of success or failure on parole or probation. *United States v. Roberson*, 872 F.2d 597 (5th Cir.), *cert. denied* — U.S. —, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *see also United*

*States v. Joan*, 883 F.2d 491 (6th Cir.1989). As outlined above, Mr. Landaw's past record of success on parole is quite poor.

Further, since convictions more than fifteen years old are properly considered under § 4A1.3, it may be noted that the time limits applicable to computing criminal history points spare Mr. Landaw a determination that he is a career offender under U.S.S.G. § 4B1.1. Mr. Landaw's guideline computations exclude the manslaughter conviction because he was released from imprisonment on July 21, 1972, more than fifteen years before commission of the offense of conviction. U.S.S.G. § 4A1.2(e)(1). Mr. Landaw's present release on parole occurred on May 17, 1987, barely two months before the expiration of the fifteen year limitation period for the manslaughter conviction. The offense of conviction occurred only fifteen months after that fifteen year period expired.

▮ Application Note 4 to U.S.S.G. § 4B1.2 states that the provisions of § 4A1.2 apply to "career offender" determinations. If those provisions did not apply, Mr. Landaw's convictions for involuntary manslaughter and distributing heroin would render him a career offender, requiring application of criminal history category VI and offense level 17, U.S.S.G. § 4B1.1(F), producing a guideline range of fifty-one to sixty-three months. U.S.S.G. Ch. 5 Pt. A. In considering departure under § 4A1.3, the court may consider that the defendant falls just short of career offender status. *United States v. Campbell*, 888 F.2d 76 (11th Cir.1989).

The Sentencing Commission faced a challenging task in devising a system for assessing the seriousness of a defendant's criminal history. The system that was adopted, however, inures to the benefit of a defendant who served the bulk of a lengthy sentence. For example, a defendant who was sentenced to five year prison sentences, was released after serving half his term, and committed new offenses shortly after release, might amass fifteen criminal history points (three points each for four sentences in excess of thirteen months, two points for committing the offense of convic-

tion while on post-incarceration supervision, and one point for committing the offense of conviction less than two years after release from imprisonment), which would place him in Criminal History Category VI. By contrast, a defendant such as Mr. Landaw, who served most of the previous fifteen years on a single, lengthy sentence, is assessed but six criminal history points, placing him in Criminal History Category III. The same total would be assessed against a defendant who committed a single felony, received a two-year sentence, and was released on parole shortly before committing the offense of conviction.

█ When considering an upward departure under § 4A1.3, the court must compare the defendant's history to most defendants in the higher category. *United States v. Miller*, 874 F.2d 466, 470–471 (7th Cir.1989); *accord, United States v. Anderson*, 886 F.2d 215 (8th Cir.1989); *United States v. Cervantes*, 878 F.2d 50 (2nd Cir.1989). Mr. Landaw's history of serious, steady, criminal activity indicates that he is more like the hypothetical recidivist who received short sentences than like a defendant who has one recent conviction. The court concludes that category III significantly under-represents both the seriousness of his criminal history and the likelihood that he will engage in future criminal activity, and that the defendant's criminal history most closely resembles that of most defendants in category VI.[2] The government seeks a departure to level VI (although it arrives at that level by different reasoning); Accordingly, the court does not conclude that it is necessary to depart above category VI, although the court has authority to do so in a proper case. *See United States v. Roberson*, 872

F.2d 597 (5th Cir.), *cert. denied* —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

A defendant at offense level 11 and in Criminal History Category VI faces a sentencing range of twenty-seven to thirty-three months imprisonment. U.S.S.G. Ch. 5 Pt. A.

### D. Consecutive Sentencing

█ Mr. Landaw faces parole revocation proceedings based on his possession of firearms. He contends that under these circumstances, the court cannot impose a consecutive sentence. While the court concurs with the probation officer that no double jeopardy violation would arise from consecutive sentencing, *United States v. Hanahan*, 798 F.2d 187 (7th Cir.1986); *United States v. Miller*, 797 F.2d 336 (6th Cir. 1986), the court agrees with the defense that the applicable Guidelines preclude consecutive sentencing.

As noted in Part A, the pre-November 1, 1989 version of the Sentencing Guidelines govern this sentencing. Before November, 1989, U.S.S.G. § 5G1.3 provided:

> If at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences, unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences. In the latter case, such instant sentences and the unexpired sentences shall run concurrently, except to the extent otherwise required by law.

Thus, the court must address two initial questions: (1) Is the defendant serving an unexpired sentence at the time of sentencing? (2) Did the unexpired sentence arise

---

**2.** Mr. Landaw presently faces charges of operating a continuing criminal enterprise. Although some authority exists for the court to consider the pending charge, *see United States v. Diaz–Villafane*, 874 F.2d 43, 50 (1st Cir.), *cert. denied* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), the court declines to do so here. The pending charge is dissimilar to the offense of conviction, and Mr. Landaw has denied his guilt and awaits trial. *Compare United States v. Jordan*, 890 F.2d 968, 976–977 (7th Cir.1989) (two pre-sentencing, post-plea arrests indicating con-

tinuing drug trafficking, warranted upward departure in drug prosecution); *United States v. Sturgis*, 869 F.2d 54 (2nd Cir.1989) (defendant had pleaded guilty to unrelated state charges, but had not been sentenced; unrelated charges properly considered in up-ward departure). Because ample grounds exist for upward departure under § 4A1.3 without regard to the pending federal case, the court need not determine whether the government can prove, in this action, that Mr. Landaw engaged in the conduct charged in that case.

out of the same transaction or occurrence as the instant offense? If both questions are answered affirmatively, the sentence must run consecutively to the unexpired sentence. If either question is answered in the negative, the sentences must run concurrently unless otherwise required by law; no other statute would appear to require consecutive sentencing.

Were Mr. Landaw deemed to be serving the unexpired heroin sentence, consecutive sentencing would be required. The unexpired sentence did not arise out of the possession of firearms; it arose out of Mr. Landaw's heroin dealings. The unexpired sentence can no more be said to have "arisen from" his possession of firearms than it could be said to have "arisen from" the urine tests that resulted in earlier parole revocations. *See United States v. Darud*, 886 F.2d 1034 (8th Cir.1989), *cert. denied* — U.S. ——, 110 S.Ct. 747, 107 L.Ed.2d 764 (1990).

Mr. Landaw, however, is not serving the unexpired sentence. He is subject to a "hold" for pending parole revocation proceedings. His parole has not been revoked. While he is subject to the Parole Commission's jurisdiction under statutes governing his parole proceedings, 18 U.S.C. § 4210(a), he is not "serving" the unexpired sentence. Accordingly, the sentences must run concurrently under the applicable version of U.S.S.G. § 5G1.3.

### E. Selection of Sentence

■ For the reasons set forth above, based on an offense level of 11 and a Criminal History Category of VI, Mr. Landaw faces a sentencing range of twenty-seven to thirty-three months imprisonment. Because Mr. Landaw possessed more than one firearm when one would have sufficed for conviction and engaged in obstructive conduct well beyond that necessary to justify the two-level enhancement under U.S.S.G. § 3C1.1, the court believes it appropriate to impose a sentence at the high end of the sentencing range, or thirty-three months.[3]

■ The court also must impose a period of supervised release of at least two, but not more than three, years. U.S.S.G. § 5D1.2(b)(2). Mr. Landaw's steady criminal activities and history of substance abuse lead the court to believe that a maximum period of supervised release, or three years, is necessary.

Mr. Landaw also faces a fine of not less than $2,000.00, U.S.S.G. § 5E1.2(c)(3), nor more than $250,000.00, 18 U.S.C. § 3623, together with an amount sufficient to pay the government's costs of his imprisonment and supervised release. U.S.S.G. § 5E1.2(i). According to the Administrative Office of the United States Courts, Mr. Landaw's thirty-three months of imprisonment will cost the government $39,930.00 and his thirty-six months of supervised release will cost the government an additional $3,587.76, for a total of $43,517.76.

Mr. Landaw declined to submit information to the court concerning his ability to pay a fine, and the presentence report indicates that while on parole, Mr. Landaw was able to acquire four parcels of real estate. Nonetheless, because Mr. Landaw recently was found to be indigent in another case pending in this court, the court concludes that Mr. Landaw cannot, and is not likely to become, able to pay a fine or the costs of his imprisonment and supervised release. Accordingly, the court imposes no fine.

### F. Sentence

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, Edward E. Landaw, Jr., is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of thirty-three months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall re-

---

**3.** The court recognizes that because the spread of the applicable guideline range is less than twenty-four months, no reason need be stated for imposing sentence at a particular point within the applicable range. 18 U.S.C. § 3553(c)(1); *United States v. Ehret*, 885 F.2d 441, 445 (8th Cir.1989), *cert. denied* — U.S. ——, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). Nonetheless, the court believes it appropriate to articulate those reasons.

port in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another federal, state, or local crime, shall comply with the thirteen standard conditions of supervised release set forth in U.S.S.G. § 5B1.4(a), and shall comply with the following additional conditions:

(1) the defendant shall not possess a firearm or other dangerous weapon during the period of supervised release; and

(2) the defendant shall participate in a program for the treatment of drug and/or alcohol dependency, which may include urine testing, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer.

It is further ordered that the defendant shall pay to the United States a special assessment of $50.00, which shall be due immediately. Because the defendant is indigent, the court imposes no fine.