**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Henry FAYETTE, Defendant–Appellant.**

**No. 89–5306.**

United States Court of Appeals,
Eleventh Circuit.

March 8, 1990.

Anthony Carbone and Jon May, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Robert Ciaffa, Linda C. Hertz, Carol E. Herman and Harriett R. Galvin, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and BRIGHT *, Senior Circuit Judge.

HATCHETT, Circuit Judge.

In this sentencing guidelines case, we are asked to determine whether the district court erred when it departed from the Federal Sentencing Guidelines on the basis of post-plea criminal conduct. Holding that the district court should have considered adjusting the criminal history category, instead of making an unguided departure from the Sentencing Guidelines, we vacate the sentence and remand this case to the district court for resentencing.

FACTS AND PROCEDURAL HISTORY

In May, 1988, Henry Fayette paid Denise Montes, an officer with the Immigration

---

* Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa-   tion.

and Naturalization Service (I.N.S.), $7,500 in exchange for the issuance of temporary work authorization permits for fifteen aliens. At the time, Montes was cooperating with the Federal Bureau of Investigation.

On September 26, 1988, the United States Attorney charged Fayette in a one count information with bribery of a public official, in violation of 18 U.S.C. §§ 201(b)(1)(C) and 2. Fayette pleaded guilty to this charge on November 10, 1988. The plea agreement gave the district court the flexibility to sentence Fayette up to the statutory maximum sentence of fifteen years in prison and a $250,000 fine.

On November 15, 1988, while Fayette was free on a personal surety bond pending sentencing, he met I.N.S. Special Agent Andres Correa in Miami. Correa, who was acting in an undercover capacity, had previously contacted Fayette by telephone from Virginia claiming to be an illegal alien from Bolivia in need of a work permit. In exchange for $3,500, Fayette prepared an application for resident status which stated that Correa was a special agricultural worker. Fayette also gave Correa fraudulent documents to support his application and advised him as to the application process. Based upon these activities, the United States Attorney filed an Information in the Eastern District of Virginia charging Fayette with conspiring to submit and submission of fraudulent writings and documents intended for use in filing applications for the adjustment of alien status, in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1160(b)(7)(A). Pursuant to Fed.R.Crim.P. 20, the Eastern District of Virginia transferred the Information to the Southern District of Florida for a plea and sentencing. *United States v. Fayette*, No. 89–55–Cr–Nesbitt (S.D.Fl.).

Fayette was later charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *United States v. Fayette*, No. 89–104–Cr–Ryskamp (S.D.Fl.). This charge arose out of the discovery of a handgun in Fayette's Jeep Cherokee when it was seized and searched following Fayette's arrest on the fraudulent immigration documents charge. The district court denied a motion to consolidate all three cases—the bribery charge, the fraudulent immigration documents charge and the gun possession charge—concluding that it would only sentence Fayette on the bribery charge.

The presentence investigation report (PSI) calculated Fayette's adjusted offense level at 14. This calculation was based upon an offense level of 12 for the bribery charge, plus a two-level adjustment for obstruction of justice due to Fayette's failure to truthfully report financial assets. Because Fayette had no prior criminal convictions, the PSI placed him in criminal history category I. The PSI concluded that the appropriate prison sentence, under the Sentencing Guidelines, ranged from fifteen to twenty-one months. *See* United States Sentencing Commission, *Guidelines Manual*, Ch. 5, Part A (Sentencing Table) (November 1989) (hereinafter Guidelines). Because of Fayette's post-plea offenses, the PSI recommended an upward departure from the Guidelines.[1]

On March 17, 1989, Fayette appeared before the district court for sentencing. The district court agreed with the PSI's calculation of the applicable adjusted offense level and criminal history category and concluded that an upward departure from the Guidelines was appropriate given Fayette's post-plea criminal conduct. The district court then sentenced Fayette to forty-two months in prison ("double the guidelines"), two years of supervised release, a $25,000 fine and a $50 special assessment.

## CONTENTIONS

Fayette contends that the district court erred when it departed from the Sentenc-

---

**1.** Fayette later pleaded guilty to the fraudulent immigration documents charge and the gun possession charge. Judge Nesbitt sentenced Fayette on the fraudulent immigration documents offense to fourteen months in prison to be served consecutively to his sentence in this case.

Judge Ryskamp imposed a concurrent sentence of four months in prison on the gun possession offense. At the time of sentencing in this case, Fayette did not challenge the PSI's detailed narrative of his post-plea offenses.

ing Guidelines on the basis of his post-plea criminal conduct. According to Fayette, the district court should have adjusted his criminal history category pursuant to Guidelines § 4A1.3, instead of departing from the Guidelines under § 5K2.0. In contrast, the government contends that the district court's departure from the Guidelines was appropriate given Fayette's subsequent criminal conduct.

## ISSUE

The sole issue is whether the district court erred by departing from the Sentencing Guidelines on the basis of post-plea criminal conduct, rather than first considering an upward adjustment from one criminal history category to another under Guidelines § 4A1.3.

## DISCUSSION

A. Guideline Sentencing and Departures

■ The Guidelines, which were promulgated by the United States Sentencing Commission (Commission), provide "detailed guidelines prescribing the appropriate sentences for offenders convicted of federal crimes." Guidelines Ch. 1, Part A, Introduction 1 at 1.1 (November 1989). Ordinarily, a district court must select a sentence from within the applicable guideline range. Guidelines Ch. 1, Part A, Introduction 2 at 1.1 (November 1989). Determination of the applicable guideline range requires a district court to calculate the appropriate total "offense level" and "criminal history category," and then to find the corresponding sentencing range mandated by the Sentencing Table. Guidelines § 1B1.1 and Ch. 5, Part A (November 1989); *see generally United States v. Scroggins*, 880 F.2d 1204, 1208–10 (11th Cir.), *reh'g in banc denied*, 888 F.2d 1398 (11th Cir.1989).

Where, however, a particular case presents an atypical situation, a district court may depart from the Guidelines and impose a sentence outside the otherwise applicable sentencing range. Guidelines Ch. 1, Part A, Introduction 2 (November 1989). The Guidelines permit two different types of departures: guided and unguided. Guidelines Ch. 1, Part A, Introduction 4(b) (policy statement) (November 1989).

Guided departures (or adjustments) involve situations where the Guidelines provide specific guidance for the departure either "by analogy or by other numerical or non-numerical suggestions." Guidelines Ch. 1, Part A, Introduction 4(b) at 1.7 (policy statement) (November 1989). Departure from the otherwise applicable criminal history category, pursuant to Guidelines § 4A1.3, is an example of a guided departure. "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct *or* the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." Guidelines § 4A1.3 at 4.9 (policy statement) (November 1989) (emphasis added).

■ Examples of possible grounds for departure under Guidelines § 4A1.3 are diverse and include, among other things, "whether the defendant was pending trial, sentencing, or appeal on another charge at the time of the instant offense" or "prior similar adult criminal conduct not resulting in a criminal conviction." Guidelines § 4A1.3 at 4.9 (policy statement) (November 1989). These examples, as well as others mentioned in the Guidelines, are not intended to exhaust the possible bases of departure.

When an adjustment or departure is made under Guidelines § 4A1.3, the Guidelines instruct a district court to "use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." Guidelines § 4A1.3 at 4.9 (policy statement) (November 1989). Thus, for example:

if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with a Category IV criminal history, the court

should look to the guideline range specified for a defendant with a Category IV criminal history to guide its departure. Guidelines § 4A1.3 at 4.9–4.10 (policy statement) (November 1989).[2]

The Guidelines, as previously noted, also make provision for *unguided departures.* Guidelines § 5K2.0 (policy statement) (November 1989). A district court may impose a sentence outside the applicable guideline sentencing range if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C.A. § 3553(b) (West Supp.1989); *see also* Guidelines § 5K2.0 (policy statement) (November 1989). Departures are permissible because of "the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision." Guidelines Ch. 1, Part A, Introduction 4(b) at 1.6 (November 1989).

### B. Fayette's Sentence

In this case, the district court made an unguided departure from the Guidelines pursuant to Guidelines § 5K2.0.[3] The district court concluded that a sentence of "double the guidelines" was warranted because Fayette recklessly continued to break the law:

> The court is of the opinion that your conduct with regard to the matter in ... Virginia, which the Court, I think, has a right to take judicial knowledge of since you have Rule 20'd that matter down here which means you are intending to plead guilty whenever that plea is taken, shows in the Court's opinion a recklessness on your part by way of engaging in

the very thing ... for which you had pled guilty before this Court.

> In the Court's opinion, that kind of reckless conduct is the type that is intended, with regard to the Court departing from the sentencing guidelines range, that is intended to apply to individuals who, in fact, have a criminal conduct but at least recognize that once caught, they had better curtail that conduct.

> We apparently didn't get your attention when that occurred. It is the Court's opinion that the guidelines and the 15 to 21 months is not adequate....

> The Court is going to sentence the defendant to 42 months, double the guidelines.

In essence, the district court departed from the Guidelines because the applicable guideline sentencing range did not adequately reflect Fayette's post-plea criminal conduct which suggested the likelihood of recidivism.[4]

Fayette argues that the district court erred when it departed from the Guidelines because of his subsequent criminal conduct. According to Fayette, when the Guidelines do not adequately reflect a defendant's criminal history or likely recidivism due to post-plea criminal activity, the district court should first consider an upward adjustment of the criminal history category, pursuant to Guidelines § 4A1.3, before departing from the Guidelines. In support of this conclusion, Fayette maintains that had his post-plea offenses occurred prior to his guilty plea on the bribery charge, or had he been charged with all three offenses in a single information, that his sentence would have been substantially less than that imposed by the district court. Finally, Fayette argues that the district

---

**2.** "The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted." Guidelines § 4A1.3 at 4.10 (policy statement) (November 1989).

**3.** We arrive at this conclusion because the district court: (1) *did not invoke Guidelines* § 4A1.3; (2) did not specifically base its decision upon the inadequacy of the criminal history category; and (3) did not follow the methodology provided for in Guidelines § 4A1.3.

**4.** Immediately prior to sentencing Fayette, the district court stated that it would not consider the gun possession offense when imposing sentence.

court's departure from the Guidelines is inconsistent with the aims of guideline sentencing.

The government contends that the district court did not err when it sentenced Fayette. First, the government maintains that the district court's findings of fact as to Fayette's "reckless conduct" were completely supported by the record and not clearly erroneous. Second, the government argues that the district court's departure from the Guidelines was reasonable given Fayette's flagrant disregard for the law despite his status as a felon awaiting sentencing. Finally, the government maintains that to vacate Fayette's sentence and require the district court to sentence pursuant to Guidelines § 4A1.3 would result in a numerical exercise elevating mere mechanics over the district court's exercise of well-reasoned discretion.

## C. Analysis

■ The specific question before this court is how to treat post-plea offenses under the Guidelines. The Guidelines do not explicitly address the manner in which post-plea offenses should be factored into the guidelines sentencing process. This is a question of first impression in the Eleventh Circuit. We have a choice between requiring district courts to upwardly adjust the criminal history category, pursuant to Guidelines § 4A1.3, or permitting district courts to depart from the Guidelines under § 5K2.0.

Fayette suggests that we resolve this question by adopting the reasoning of the Fifth Circuit in *United States v. Lopez*, 871 F.2d 513 (5th Cir.1989) and the Second Circuit in *United States v. Cervantes*, 878 F.2d 50 (2d Cir.1989). While not identical, the facts of *Lopez* and *Cervantes* are very similar to the case now before the court.

In *Lopez*, the defendant pleaded guilty to multiple counts of violating federal immigration laws. Although Lopez had a prior record involving similar offenses, she

scored a zero on her criminal history calculation because those convictions were more than ten years old. Consequently, she fell into criminal history category I. This criminal history category, when considered in combination with her offense level of 9, indicated a recommended sentencing range of four to ten months. After finding that the Guidelines sentence under-represented the defendant's past criminal behavior and likely recidivism, the district court departed from the Guidelines and sentenced Lopez to, among other things, twenty-four months in prison.

On appeal, the Fifth Circuit concluded that the district court had not followed the appropriate methodology under the Guidelines:

> The Guidelines require sentencing courts first to consider upward adjustments of the criminal history category, where a defendant's score appears inadequately to reflect his or her history, before a departure sentence may be justified on this basis. Where this is not done, resentencing is appropriate.

871 F.2d at 515.

Similarly, in *Cervantes*, where the district court had departed from the Guidelines on the basis of other criminal conduct, the Second Circuit vacated the sentence and concluded that "where a departure involves *prior criminal history*, § 4A1 primarily controls." 878 F.2d at 53. The court went on to rule:

> A precise procedure regulates the exercise of discretion in making this type of departure. In keeping with the mandate of rationalizing the sentencing process, the Guidelines require a judge to 1) determine which category best encompasses the defendant's prior history, and 2) use the corresponding sentencing range for that category 'to guide its departure.'

878 F.2d at 53 (quoting section 4A1.3 of the Guidelines).[5] Applying the logic of *Lopez* and *Cervantes* to this case, Fayette maintains that the district court should have

---

**5.** The Second Circuit recently held that "[t]he procedural requirements of *Cervantes* apply equally to both of the reasons specified in Section 4A1.3 why a criminal history category might be inadequate in a particular case." United States v. Coe, 46 Crim.L.Rep. 1252, 1254 (BNA) (2d Cir. November 30, 1989).

upwardly adjusted his criminal history category, instead of making an unguided departure from the Guidelines.[6]  We agree.

■ We hold that Guidelines § 4A1.3 is controlling where, as here, a departure involves post-plea offenses.  Such a departure may be justified when, as a consequence of post-plea criminal conduct, the otherwise applicable guideline sentencing range significantly under-represents the seriousness of the defendant's pre-sentencing criminal history or likely recidivism.  Our conclusion is based upon: (1) the rationale underlying guided adjustments or departures from the criminal history category and its applicability to post-plea offenses; (2) fairness considerations; and (3) the inappropriateness of an unguided departure from the Guidelines given the aims of guideline sentencing.

1. *The Rationale of the Criminal History Category and Its Applicability to Post-plea Offenses*

The Commission created the criminal history category because Congress directed that offender characteristics, such as prior criminal offenses, be factored into the Guidelines.  *See* 28 U.S.C.A. § 994(d) (West Supp.1989).  As we recently stated, although "the guidelines consider evidence of the offender's criminal history for purposes of punishment and general deterrence, its primary importance is to ensure that the specific defendant is deterred from future criminal conduct."  *Scroggins,* 880 F.2d at 1209;  *see also* 18 U.S.C.A. § 3553(a)(2) (West 1985);  Guidelines Ch. 4, Part A (introductory commentary) (November 1989).  To further these objectives, a district court may make a guided adjustment or departure under Guidelines § 4A1.3 when, as previously noted, the criminal history category significantly under-represents the seriousness of a defendant's criminal history or the likelihood that a defendant will commit future crimes; either reason, standing alone, may be sufficient.

Post-plea offenses, no less than offenses which occur prior to the entry of a plea, implicate the concerns which led to the creation of a criminal history category with guided departure provisions.  The only difference between pre-plea and post-plea offenses is when they occur.  We consider this to be a difference without significance.  Post-plea offenses, like pre-plea offenses, involve additional criminal activity by the defendant.  Moreover, both pre-plea and post-plea offenses occur prior to sentencing and the entry of final judgment.  Finally, and most importantly, post-plea offenses, like pre-plea offenses, make a defendant more culpable and suggest the likelihood of recidivism and future criminal behavior.  Indeed, the district court appears to have imposed a departure sentence upon Fayette for these very reasons.

Therefore, given the fit between the "individual deterrence" objectives of the criminal history category and the "recidivism" concerns posed by Fayette's post-plea offenses, we are persuaded that a guided adjustment under Guidelines § 4A1.3 is the most appropriate mechanism for factoring Fayette's post-plea offenses into the guidelines sentencing process.

2. *Fairness Considerations*

Fairness considerations also support our conclusion.  The district court sentenced Fayette to forty-two months of imprisonment.  Had Fayette been convicted of the two subsequent offenses (the gun possession offense and the fraudulent documents offense) just prior to pleading guilty to the present bribery charge, his criminal history category would probably have been no more than a III yielding a sentencing range of twenty-one to twenty-seven months.  *See* Guidelines § 4A1.1 and Ch. 5, Part A (November 1989).  We do not believe it fair that an individual criminal defendant should face the possibility of such disparate sentences simply because of the timing of additional criminal conduct.

The government argues that resentencing is unnecessary because the district court could have reached the same result had it calculated Fayette's sentence under

---

**6.** We recently cited *Lopez* and *Cervantes* with approval in *United States v. Jackson,* 883 F.2d

1007, 1009 (11th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 747, 107 L.Ed.2d 764 (1990).

the guiding principles of Guidelines § 4A1.3. To impose a forty-two month sentence, the district court would have had to determine that Fayette's criminal history was best represented by category VI. *See* Guidelines Ch. 5, Part A (November 1989). Although we state no opinion as to the appropriate calculation of Fayette's criminal history category on remand, we find no basis for the government's assertion that the record would support adjusting Fayette's criminal history category from a I to a VI.

### 3. *The Aims of Guideline Sentencing*

Finally, our conclusion, that the district court should have adjusted Fayette's criminal history category rather than depart from the Guidelines, is most consistent with the aims of guideline sentencing. The Guidelines were promulgated to rationalize the sentencing process by, among other things, promoting *"uniformity* in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders." Guideline Ch. 1, Part A, Introduction 3 at 1.2 (policy statement) (November 1989) (emphasis in original); 28 U.S. C.A. § 991(b)(1)(B) (West Supp.1989); *see also* Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest,* 17 Hofstra L.Rev. 1, 4–5 (1988). It is for this reason that unguided departures from the Guidelines, pursuant to Guidelines § 5K2.0, are "highly unusual" and only justified when an aggravating or mitigating circumstance exists which was not adequately taken into consideration when the Guidelines were formulated. *See* Guidelines Ch. 1, Part A, Introduction 4(b) at 1.7 and 5K2.0 (November 1989). Because we conclude that Guidelines § 4A1.3 adequately takes into consideration post-plea offenses, we do not believe that an unguided departure is in keeping with the aims of guideline sentencing. In our view, giving district courts broad discretion in their treatment of post-plea offenses "risks a return to the wide disparity that Congress established the Commission to limit." Guidelines Ch. 1,

Part A, Introduction 3 at 1.3 (policy statement) (November 1989).

## CONCLUSION

In summary, we hold that the district court, on this matter of first impression, made a choice different from the one we now make, when it departed from the Guidelines on the basis of Fayette's post-plea criminal conduct. Accordingly, we vacate Fayette's sentence and remand this case to the district court for resentencing. On remand, the district court is instructed to utilize the methodology provided in Guidelines § 4A1.3 when factoring Fayette's post-plea offenses into the sentencing process. If the district court determines that an adjustment in Fayette's criminal history category is appropriate, it should articulate its reasons.

REVERSED and REMANDED.