UNITED STATES of America,
Appellee–Cross–Appellant,

v.

Leonard JOYNER,
Defendant–Appellant–Cross–Appellee,

José Valentin, Defendant–Appellee.

Nos. 114, 222, Dockets 90–1171, 90–1224.

United States Court of Appeals,
Second Circuit.

Argued Sept. 27, 1990.

Decided Jan. 24, 1991.

Henry J. Steinglass, New York City, for defendant-appellant-cross-appellee.

Robert W. Ray, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Helen Gredd, Asst. U.S. Atty., New York City, on the brief), for appellee-cross-appellant.

David B. Levitt, Legal Aid Soc., New York City, for defendant-appellee.

Before LUMBARD, NEWMAN and ALTIMARI, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This challenge to a criminal sentence raises two issues concerning the Sentencing Guidelines. The first, which recurs with some frequency, is whether the quantity of narcotics deemed relevant to the offense of conviction was properly calculated. The second, occurring less frequently but implicating fundamental aspects of the guideline system, is whether a downward departure may be made because of the disparity among sentences of co-defendants, in this case, a departure based on the sentencing judge's view that the difference between a defendant's guideline range and the sentences of co-defendants was too small. These issues arise on an appeal by Leonard Joyner and a cross-appeal by the Government from judgments of the District Court for the Southern District of New York (Michael B. Mukasey, Judge) convicting Joyner and José Valentin of narcotics offenses. We conclude that the "relevant conduct" determination concerning narcotics quantity was properly made but that the downward departure was improper to the extent that it was based on disparity among co-defendants. We therefore affirm on Joyner's appeal and remand for resentencing on the Government's cross-appeal.

## Facts

*The Offense.* Joyner and Valentin were arrested as a result of activity occurring on the sidewalk outside a Manhattan restaurant. Surveillance officers observed a co-defendant, Juan Antonio Gonzalez, enter and leave the restaurant several times during a span of twenty minutes. Each time Gonzalez came out, he received cash from Joyner and Valentin and handed each of them something in return. An undercover officer then purchased from Joyner two vials of crack for $10 of marked money and from Valentin five vials of crack for $20 of marked money. Police arrested Joyner, Valentin, and Gonzalez.

As the arrests were being made, other officers entered the nearly empty restaurant and saw Elpidio Rodriguez seated alone at a table in the rear. As the officers approached him, he attempted to place his coat over a hat on a chair next to him. In attempting to cover the hat, Rodriguez tipped it over, revealing an open paper bag filled with vials of crack. The bag contained 586 vials. A search of Gonzalez disclosed the $10 used to make the purchase from Joyner; a search of Valentin disclosed eight vials of crack plus the $20 used to make the purchase from him. Joyner admitted that the man in the restaurant hired him and told him to work with Gonzalez and that he had previously worked for Rodriguez.

Joyner pled guilty to a count charging him with distributing two vials of crack within 1,000 feet of a school, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(C), 845a(a) (1988). Valentin pled guilty to a count charging him with the same offense by selling five vials of crack; he also pled to one count charging possession of eight vials of crack with intent to distribute, 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(C).

*The Sentencing.* The Probation Department recommended a base offense level of 30 for both Joyner and Valentin, U.S.S.G. § 2D1.1(c)(7), concluding that the weight of the crack contained in the 586 vials seized from Rodriguez, 39 grams, should be counted for purposes of applying the "relevant conduct" guideline, § 1B1.3. Judge Mukasey accepted this recommendation, finding that the 586 vials were part of the same course of conduct as the particular offenses to which defendants pled guilty. He reduced the base offense level by 2 levels for acceptance of responsibility, § 3E1.1, and by 3 additional levels for role

in the offense, finding that defendants' roles fell between "minor" and "minimal," § 3B1.2. Placing Joyner in Criminal History Category II and Valentin in Category I yielded sentencing ranges at offense level 25 of 63–78 months for Joyner and 57–71 months for Valentin.

Judge Mukasey then explained his reasons for a downward departure:

I am going to depart downward with respect to both defendants because I agree with one of the comments that defense counsel made[, which] is that the result of applying the guidelines in this case is to achieve something which is way out of kilter with any offense that was committed here. It would, among other things, disserve one of the ends that the guidelines are supposed to serve, which is proportionality of sentence. If I were to follow the guidelines in this case, the result, compared to the 90 months I gave the two people [Rodriguez and Gonzalez] who in my view were the most responsible and obviously responsible for what went on here, the disparity, though, would be enormous. I am not going to do that.

In further explanation, he added:

[J]ust so the record is clear on the specific factors that I found warrant departure, in Mr. Joyner's case, it is:

1. The gross disparity that would result from a literal application of the guidelines; and

2. His physical condition at the time the offense was committed completely separate and apart from any physical condition that was attributable to his use of drugs, I am not considering that. I am considering only his physical condition apart from that.

With respect to Mr. Valentin, again it's the disparity that would result from a literal application of the guidelines plus the adjustment that he's made since the time the offense was committed. I find that neither of these factors were considered to the degree that they're present here by the Guidelines Commission and, accordingly, I've departed.

Judge Mukasey sentenced Joyner to imprisonment for 40 months and Valentin to concurrent terms of 18 months' imprisonment. Joyner appeals his sentence, and the Government cross-appeals from both sentences.[1]

### Discussion

#### I. Relevant Conduct Determination

Before considering Judge Mukasey's application of the "relevant conduct" guideline, section 1B1.3, we face a technical issue of interpretation of that guideline, which is complicated by a 1989 amendment to the pertinent guideline commentary. Subsection (a)(1) of section 1B1.3 provides that the base offense level shall be determined on the basis of "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable" that occurred during, in preparation for, or to avoid detection for the offense of conviction. Subsection (a)(2) provides that for a category of offenses that includes drug offenses the base offense level shall also be determined on the basis of "all *such* acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" (emphasis added). Thus, subsection (a)(2) incorporates (a)(1)'s phrase "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would

---

1. Though Valentin did not appeal, his appellee's brief, submitted in opposition to the Government's cross-appeal, asserts that, in the event this Court should uphold the Government's challenge to the downward departure, he joins the arguments advanced by Joyner in Joyner's appeal. An appellee may seek to uphold a judgment on any ground supportable in the record, but must take a cross-appeal to secure more relief than that granted by the District Court. *United States v. American Railway Express Co.,*

265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924). It is not clear how this principle applies to a defendant who wishes to assert the correctness of a judgment imposing a sentence that resulted from a downward departure by contending that, if the departure is improper, the sentence is nonetheless correct because the sentencing judge erred in determining the applicable guideline range. Since we reject Joyner's contentions, we will assume, without deciding, that Valentin is entitled to assert them.

be otherwise accountable." *See* U.S.S.G. § 1B1.3, comment. (note 2).

■ Both before and after the 1989 amendment, the commentary to section 1B1.3 stated:

Conduct "for which the defendant would be otherwise accountable," as used in subsection (a)(1), includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused. (*Cf.* 18 U.S.C. § 2.)

*Id.* (note 1). Prior to November 1, 1989, the commentary continued:

If the conviction is for conspiracy, it includes conduct in furtherance of the conspiracy that was known to or was reasonably foreseeable by the defendant.

*Id.* (January 15, 1988, version) (App. C, amendment 3). This sentence was deleted from the commentary effective November 1, 1989, and replaced with the following:

In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.

*Id.* (November 1, 1989, version) (App. C, amendment 78).

Joyner contends that the 1989 change in the commentary cannot be applied to his offense, which occurred on December 11, 1988, because it creates a more stringent version of the "relevant conduct" guideline in violation of the *Ex Post Facto* Clause. He reads the pre–1989 version as limiting the "foreseeability" standard to conspiracy offenses. We disagree. The pre–1989 commentary explained that "conduct for which the defendant is otherwise accountable" *includes,* in the case of conspiracies, foreseeable conduct in furtherance of the conspiracy. It did not exclude such conduct in the case of joint activity undertaken in concert with others, in the absence of a conspiracy charge. The 1989 revision of the commentary made clear that the foreseeability standard applied, whether or not a conspiracy was charged, *i.e.,* it applied to

all activity undertaken in concert with others. The Commission stated that the purpose of this amendment was "to clarify the definition of conduct for which the defendant is 'otherwise accountable,'" *id.,* a statement entitled to "considerable deference." *United States v. Guerrero,* 863 F.2d 245, 250 (2d Cir.1988). Since the guideline itself at all times covered conduct for which the defendant was "otherwise accountable," we see no reason why the Commission may not aid our interpretation of this somewhat imprecise phrase by making clear that it covers reasonably foreseeable acts undertaken in furtherance of any jointly undertaken activity. *See United States v. Hewitt,* 902 F.2d 1082, 1084 & n. 1 (2d Cir.1990).

■ What remains uncertain, however, is whether the foreseeability standard was inserted into the commentary to make clear that the normal limits on the scope of vicarious liability in the criminal law would also apply to punishment or to impose, for purposes of punishment, some narrower restriction within those normal limits. If the Commission wished to reflect, for purposes of punishment, only the limits of criminal law responsibility, it could have simply said that no acts or omissions will be considered "relevant conduct" unless the facts showed, by a preponderance of the evidence, *see United States v. Guerrero,* 863 F.2d at 250, that the defendant could have been held criminally responsible for such acts or omissions. The Commission may have thought that the standard of "reasonable foreseeability" created a narrower test, *see* Wilkins and Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 510–13 (1990), but, if that was its view, it was mistaken. Under the most expansive doctrine of vicarious criminal responsibility, the *Pinkerton* doctrine, which holds a defendant liable for some substantive offenses committed by his co-conspirators, liability is imposed only if the substantive offense is "in furtherance of the conspiracy" and can be "reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Pinkerton v. Unit-*

*ed States*, 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184–85, 90 L.Ed. 1489 (1946). Thus, when the Commission offers as an example of conduct for which a defendant is not "otherwise accountable" for purposes of punishment—importation of subsequent shipments of marijuana not reasonably foreseeable by a defendant who had agreed to offload only a single shipment, U.S.S.G. § 1B1.3, comment. (note 1, illustration e) (November 1, 1989), it is reflecting only the normal limits of criminal responsibility.

With this understanding of the "relevant conduct" guideline in mind, we have no doubt that Judge Mukasey was entitled to find that Joyner was "otherwise accountable" for Rodriguez's possession of the 586 vials of crack inside the restaurant. Though acknowledging that Joyner was merely "a dime bag seller on the street," he was entitled to conclude that Joyner was "ready, willing and able and desirous of selling as many of those dime bags as he can get rid of in as short a time as he can." Though Joyner's motivation, as he contended, may have been only to secure enough crack to support his own addiction, he nonetheless was properly found to be "otherwise accountable" for Rodriguez's possession of the entire quantity available for sale that day as an act that was "part of the same course of conduct or common scheme" as the offense of conviction, in furtherance of that scheme, and reasonably foreseeable. *See United States v. Schaper*, 903 F.2d 891 (2d Cir.1990); *United States v. Copeland*, 902 F.2d 1046 (2d Cir. 1990); *United States v. Paulino*, 873 F.2d 23 (2d Cir.1989). As *Copeland* makes clear, the relevant conduct guideline applies, in appropriate circumstances, to quantities of narcotics possessed by co-defendants.

## II. Downward Departure

The Government's cross-appeal primarily challenges the lawfulness of Judge Mukasey's decision to make a downward departure to the extent that the departure rested on a perceived disparity between the guideline ranges applicable to Joyner and Valentin and those applicable to their co-venturers, Rodriguez and Gonzalez. A "dispari-

ty" usually results because offenders in similar circumstances are given significantly different sentences, *see Mistretta v. United States*, 488 U.S. 361, 366, 109 S.Ct. 647, 651, 102 L.Ed.2d 714 (1989), and reducing "unwarranted" disparities of this sort was a principal objective that Congress required the Sentencing Commission and sentencing judges to achieve, *see* 28 U.S.C. § 991(b)(1)(B) (1988); 18 U.S.C. § 3553(a)(6) (1988). However, the term may also be applied, as Judge Mukasey used it in this case, to the imposition of similar sentences upon offenders in significantly different circumstances. *See also* L. Tribe, *American Constitutional Law* § 16–1 at 993–94 (1978) (noting similar dual aspects of Equal Protection Clause). In this case, the sentencing judge was concerned that sentencing without a downward departure would create a disparity of the latter type.

■ The departure standard—existence of "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," 18 U.S.C. § 3553(b) (1988)— does not confer on sentencing judges "unbounded" discretion to depart from applicable guideline ranges, *United States v. Colon*, 905 F.2d 580, 585 (2d Cir.1990), and we review *de novo* the legal issue of whether a factor was permissibly relied on as grounds for a departure, *United States v. Barone*, 913 F.2d 46, 50 (2d Cir.1990); *United States v. Lara*, 905 F.2d 599, 602 (2d Cir. 1990).

■ Whether disparity resulting from differences in applicable guideline ranges among co-defendants in a single case permits a departure raises a fundamental issue in the administration of the sentencing guidelines. The Commission has reported that this circumstance has been given as a reason for a downward departure in five instances in 1988 and in nineteen instances in 1989. *See* United States Sentencing Commission, *1988 Annual Report* 42 (Table XII) (1989); *id. 1989 Annual Report* 50 (Table IX) (1990). Despite the frequency of departures to alter disparity among co-de-

fendants, the lawfulness of reliance on this factor has rarely been litigated. Recently, the Sixth Circuit upheld a sentencing judge's authority to depart downward to *lessen* differences among sentences of co-defendants, but restricted the significance of its ruling by holding that the circumstance justifying leniency for the co-defendants—cooperation—did not apply to the defendant whose departure was challenged by the Government.[2] *United States v. Nelson,* 918 F.2d 1268 (6th Cir.1990).

Congress specified as a purpose of the Sentencing Commission establishing policies and practices that "avoid[ ] *unwarranted* sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct," 28 U.S.C. § 991(b)(1)(B) (1988) (emphasis added), and required the Commission to give "particular attention" to the objective of "reducing *unwarranted* sentence disparities," *id.* § 994(f) (emphasis added). Similarly, the sentencing judge is required to consider "the need to avoid *unwarranted* sentence disparities." 18 U.S.C. § 3553(a)(6) (1988) (emphasis added). The method chosen by Congress to avoid unwarranted disparities is a guideline system that prescribes appropriate sentencing ranges for various combinations of facts concerning an offense and an offender and permits a sentencing judge to depart from the recommended range in unusual circumstances. Departure authority, though not designed to prevent a sentencing judge from exercising "discretion, flexibility or independent judgment," *United States v. Lara,* 905 F.2d at 604, is nonetheless a device for implementing the guideline system, not a means of casting it aside. *See United States v. Reina,* 905 F.2d 638, 640 (2d Cir.1990) (rejecting downward departure made to ameliorate Commission's judgment that punishment for cocaine base offenses should exceed those for cocaine).

This authority must be exercised according to the statutory standard.

The question therefore becomes whether disparity among co-defendants is a factor that was not adequately considered by the Commission, or, even if it was so considered, was it present in this case to such a degree as to have been beyond the Commission's consideration? We think the entire structure of the sentencing guideline system indicates that the Commission fully considered the resulting disparities that would result among co-defendants and was satisfied that the different ranges it prescribed for differences in offense conduct and prior record would produce differences in punishments that the Commission believed were appropriate, rather than the "unwarranted" disparities that Congress sought to eliminate.

The departure authority permits a sentencing judge to recognize that some factor concerning an individual defendant is of a kind or is present to a degree not adequately considered by the Commission. But neither Congress nor the Commission could have expected that the mere fact of a difference between the applicable guideline range for a defendant and that of his co-defendant would permit a departure, either because the difference was too large or too small. The Congressional objective was to eliminate unwarranted disparities nationwide. An applicable guideline range may seem harsh (or lenient) when compared to that of a co-defendant, but it is the same range applicable throughout the country for all offenders with the same combination of offense conduct and prior record. To reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all sim-

---

**2.** In *United States v. Daly,* 883 F.2d 313 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990), the sentencing judge departed downward both to reflect the defendant's cooperation with the Government and to lessen the difference between the defendant's applicable guideline range and the sentences of co-defendants. The defendant appealed, complaining that the departure was too limited. The Government, evidently believing that the departure was justified by the defendant's cooperation, took no cross-appeal. Though the Fourth Circuit's opinion can be read to approve a departure to lessen disparity among co-defendants, the issue was not adjudicated.

ilarly situated defendants throughout the country. The defendant should not be favored, compared to all those similarly situated defendants, simply because his applicable sentencing range is not as distant from that of his co-defendant as the sentencing judge thinks appropriate. A downward departure made solely to increase the difference between a defendant's sentence and that of his co-defendants simply reflects a sentencing judge's assessment that the Commission has set either too low a sentencing range for the combination of facts that determines the co-defendant's applicable guideline or too high a sentencing range for the guideline applicable to the defendant.

 Nor is there merit to Valentin's argument that the unusual circumstance justifying a departure is the fortuity that his co-defendant supplier was arrested at the same time he was, thereby leading to discovery of the quantity of narcotics involved in their common scheme. The fact that incriminating evidence of the scope of a criminal offense is discovered in some cases but not in others is not a circumstance that the Commission could have failed to consider.

 Though disparity among co-defendants as such is not a permissible basis for departure, a sentencing judge is entitled to achieve a result that coincidentally increases or decreases the gap between sentencing ranges applicable to co-defendants if the judge finds in good faith that the statutory criterion for a departure has been met. Joyner and Valentin contend that a departure was appropriate properly to reflect their minor role in the offense compared to that of their co-defendants who each received a term of 90 months. But, as the Government responds, differences among defendants' roles in the offense were considered by the Commission in authorizing increases and decreases of up to four levels for aggravating or mitigating roles. U.S.S.G. §§ 3B1.1, 3B1.2. Having determined, with adequate support in the evidence, that

the roles played by Joyner and Valentin entitled them to a three-level reduction, appropriate for conduct between the categories of "minor participant" and "minimal participant," the sentencing judge obviously did not believe that their roles were so extraordinarily minute that they deserved a departure beyond the four-level maximum reduction available for "minimal" participation. *Cf. United States v. Colon,* 905 F.2d at 585–86 (recognizing possibility of upward departure for unique leadership role beyond adjustment for "organizer" or "leader").

 Apart from adjusting the disparity among co-defendants, Judge Mukasey also grounded departure on circumstances peculiar to each appellant—Joyner's physical condition distinct from his use of drugs [3] and Valentin's adjustment since the offense. Both circumstances, he concluded, were present to a degree not considered by the Commission. The Government's cross-appeal does not challenge reliance on these circumstances. However, the Government urges that the departure was improper, both because of its extent and because it was made without adequate consideration of analogous guideline levels. *See United States v. Kim,* 896 F.2d 678 (2d Cir.1990) (requiring consideration of analogous offense levels for section 5K departures); *United States v. Cervantes,* 878 F.2d 50 (2d Cir.1989) (requiring consideration of analogous criminal history categories for section 4A departures). Appellants reply that the use of analogous offense levels and criminal history categories is appropriate only as a caution in determining the extent of upward departures and has no place in downward departures.

Though use of the guideline table as an analogy for gauging the extent of departures was initiated in the context of upward departures in *Cervantes* and *Kim,* see *United States v. Coe,* 891 F.2d 405, 413–14 n. 9 (2d Cir.1989), we believe that approach has some, though perhaps limited, relevance to downward departures.

---

**3.** The Commission's policy statement notes that "[p]hysical condition" is not "ordinarily" relevant to a departure decision, U.S.S.G. § 5H1.4,

implying that it may be relevant on rare occasion.

The various levels determined by the Commission to be normally appropriate for various types of offense conduct can serve as a useful analogy for a judge considering how far to depart, up or down, in a case where the judge concludes that aggravating or mitigating circumstances concerning the offense warrant a departure. On the other hand, most downward departures will likely be occasioned by unusual circumstances concerning the defendant, rather than the offense, and it will rarely be the case that the guideline table offers much in the way of a helpful analogy for assessing how much a departure to make for such personal circumstances. If the guidelines supply a useful analogy, however, it will normally be appropriate to consider it.

In this case, Judge Mukasey departed downward 5 levels for Joyner and 10 levels for Valentin. Though the extent of these departures, especially the latter, appears questionable, we need not adjudicate their reasonableness since the case must be remanded for resentencing with such departures as the District Judge deems warranted without reliance on the impermissible factor of adjusting disparity among co-defendants.

On Joyner's appeal, we affirm; on the Government's cross-appeal, we vacate both sentences and remand for resentencing consistent with this opinion.