UNITED STATES of America, Appellee,

v.

Michael AHUJA, Defendant–Appellant.

No. 1378, Docket 90–1044.

United States Court of Appeals,
Second Circuit.

Argued July 18, 1990.

Decided June 12, 1991.

Roger L. Stavis, New York City (Steven R. Kartagener, Kartagener & Stavis, of counsel), for defendant-appellant Michael Ahuja.

Matthew E. Fishbein, Asst. U.S. Atty., for the E.D.N.Y., Brooklyn, N.Y. (Andrew

J. Maloney, U.S. Atty., for E.D.N.Y., Beryl A. Howell, Asst. U.S. Atty., for E.D.N.Y., of counsel), for appellee.

Before WINTER, MAHONEY and WALKER, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Michael Ahuja takes this appeal from a judgment entered in the United States District Court for the Eastern District of New York, I. Leo Glasser, *Judge*, that sentenced Ahuja to a term of twenty-four months imprisonment, together with a fine of $10,000, a special assessment of fifty dollars, and a three year term of supervised release, upon his guilty plea to seven counts of assisting the attempted escape of a federal prisoner in violation of 18 U.S.C. § 752(a) (1988), and one count of conspiracy to commit six of those offenses in violation of 18 U.S.C. § 371 (1988).

Ahuja's conviction arose from attempts that he made to bribe New York City police officers in order to effect the escape of a number of federal prisoners. He appeals on the grounds that the grouping of the counts to which he pleaded guilty was improper under U.S.S.G. § 3D1.2, and that the district court's upward departure of six months above the guideline maximum was improper.

We affirm.

### Background

After the New York City police ascertained that Michael Ahuja was interested in bribing a member of that department, an undercover New York City policeman posing as a corrupt officer was introduced to Ahuja. The two men were in contact for about two months when, in January 1989, Ahuja met with the officer to request assistance in the escape of four federal prisoners who had recently been arrested at a Queens warehouse while loading a truck with some $18,000,000 in cash. In the course of that discussion, Ahuja made a telephone call to obtain the names of the prisoners. The names were Alexander Lara, Carlos Andrade, Omar Ospina, and Aguilera Martinez, which correspond to counts two through five of the indictment herein, respectively.

At a second meeting a few days later, Ahuja and the undercover officer agreed upon a price of $300,000 for the escape of the four prisoners, $50,000 of which would be paid in advance. This down payment was delivered by one of Ahuja's accomplices to a second undercover officer, and it was thereafter agreed that Ahuja would receive a $50,000 kickback from the officers upon delivery of the balance. About three weeks later, Ahuja met with the second officer again and told him that he wished to arrange the escape of a new "customer" who had been arrested in the Bronx the previous evening, one Jimmy Santos. The contemplated Santos escape is the subject of count six of the indictment herein, the only substantive count not incorporated in count one, the conspiracy count.

In March 1989, at the request of the undercover officers, Ahuja delivered four business suits, purportedly for the use of the four original escapees. At or about this time, Ahuja brought up the possible release of two additional prisoners who were in federal custody in Houston, Texas, Henry Cortez and Fernando Cardona. These contemplated escapees are the subject of counts seven and eight of the indictment herein. Through subsequent meetings, Ahuja and the officers agreed upon a price of $175,000, with a $30,000 down payment, for the escape of the Texas prisoners. Before any payments were made on this agreement, however, Ahuja was arrested in April 1989 by New York State authorities.

In November 1989, Ahuja pled guilty to all eight counts of the indictment herein. The presentence report grouped the conspiracy offense together with the substantive offenses, in accordance with U.S.S.G. § 3D1.2(b). The substantive counts, however, were divided into two separate groups, one relating to the prisoners in New York and the other relating to the prisoners in Texas, again in reliance upon U.S.S.G. § 3D1.2(b). This separate grouping resulted in a two-level enhancement

pursuant to U.S.S.G. § 3D1.4. Because this increase was offset by the only other adjustment suggested, a two-level decrease for acceptance of responsibility, the report concluded that Ahuja should be sentenced at the base offense level for a substantive escape count, which U.S.S.G. § 2P1.1(a)(1) sets at thirteen. The district court adopted this calculation of Ahuja's offense level, which resulted in a guideline range of twelve to eighteen months. For reasons discussed hereinafter, however, the district court elected to depart upwardly and sentenced Ahuja to a term of imprisonment of twenty-four months.

This appeal followed.

### Discussion

#### A. *Grouping of Offenses.*

■ U.S.S.G. § 3D1.1(a)(1) requires that when a defendant has been convicted of more than one count, the court must initially "[g]roup the counts resulting in conviction into distinct Groups of Closely–Related Counts ('Groups') by applying the rules specified in § 3D1.2." As pertinent here, section 3D1.2 provides:

All counts involving substantially the same harm shall be grouped together into a single Group.... Counts involve substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan....

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

Applying these criteria, the district court separated the contemplated New York and Texas escapes into two groups. Ahuja contends that his offense level was thus improperly enhanced two levels, *see* U.S.S.G. § 3D1.4, because the seven substantive escape counts should have been grouped as a single sentencing unit. He argues that the addition of the two Texas prisoners to what he characterizes as an ongoing escape plan did not warrant separate grouping. We disagree.

Although Ahuja was in occasional contact with the undercover officers for over five months, the district court correctly rejected the notion of a single escape plan. Two distinct bribery payments were independently negotiated for the separate escapes of two prisoner groups located in different states. Indeed, Ahuja never broached the subject of aiding prisoners in Texas until more than a month after making a down payment on the escape of the New York prisoners. Mere similarities between the agreements do not make them a common plan. *Cf. United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir.1990) (two escape attempts separated by three months considered distinct offenses), *cert. denied*, —— U.S. ——, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991).

#### B. *Upward Departure.*

■ At sentencing, the district court elaborated upon two grounds underlying the six month upward departure to a total prison term of twenty-four months:

What Mr. Ahuja was negotiating about was to release—obtain the release of four major, major money launders [sic] who were obviously also involved in major narcotics offenses....

There is the bribery element which went into this offense. I'll not penalize Mr. Ahuja for bribery. He wasn't convicted of, although he could have been.... [T]he bribery guideline is something in the area of 20 which would start at about 33 months, when one stops to consider the three hundred thousand dollars that was involved in the bribe attempt, [and] the additional points which are added to the fact that it's a law enforcement officer who was being bribed....

It's not just passing a little saw to somebody in a federal institution to cut through a bar, somebody who is there because he was engaged in illegal gam-

bling. You are dealing with six major figures involving 18 million dollars and the bribery of two New York City policemen in the process. . . .

On appeal, Ahuja has attacked only one departure ground—the seriousness of the charges on which the would-be escapees were being held. The applicable guideline at the time of Ahuja's sentencing, *see* 18 U.S.C. § 3553(a)(4) (1988), provided a base offense level for escape, instigating or assisting escape of "(1) 13, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense; [and] (2) 8, otherwise." U.S.S.G. § 2P1.1(a).

Ahuja argues that this five level distinction, grounded on whether the charge the escapee faces is a felony or a misdemeanor, demonstrates that the seriousness of the escapee's offense is a circumstance that the Sentencing Commission not only considered, but acted upon. This argument is not without force. Moreover, although a factor actually incorporated in the guidelines may nonetheless warrant departure if present "to a degree" not adequately considered by the Commission, *see* 18 U.S.C. § 3553(b) (1988), it is a fairly close question whether the gravity of money laundering, even on this grand scale, would be sufficiently unusual to justify departure. We need not resolve, however, the issue whether the gravity of the prisoners' offenses would, standing alone, warrant departure, since the district court invoked an adequate independent ground for the upward departure; to wit, the attempted bribery of law enforcement officers.

■ Some circuits have taken the view that "[w]hen one of two or more stated reasons for departure is invalid, the case must be remanded for resentencing because the reviewing court cannot determine whether the same departure would have resulted absent the improper factor." *United States v. Zamarripa*, 905 F.2d 337, 342 (10th Cir.1990); *see United States v. Michael*, 894 F.2d 1457, 1460 & n. 2 (5th Cir.1990) (although district court placed greater emphasis upon a factor that alone provided reasonable basis for departure,

"we cannot say that it did not also rely upon the [improper] factor as a necessary part of the basis for its departure"); *United States v. Hernandez–Vasquez*, 884 F.2d 1314, 1315–16 (9th Cir.1989) (per curiam) (same).

Other circuits have held that "when a court relies on both proper and improper factors to justify an upward departure, the sentence can be upheld if, standing alone, the proper factors justify the magnitude of departure." *United States v. Franklin*, 902 F.2d 501, 508 (7th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990); *see United States v. Rodriguez*, 882 F.2d 1059, 1068 (6th Cir.1989) (same), *cert. denied*, — U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990); *see also United States v. Hummer*, 916 F.2d 186, 195 n. 8 (4th Cir.1990) (Wilkins, J.) (*Franklin/Rodriguez* rule "is more consistent with the 'reasonableness' standard of departure under 18 U.S.C.A. § 3742" than *Zamarippa/Hernandez–Vasquez* rule), *cert. denied*, — U.S. —— 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991).

We recently adopted the latter view in the context of a downward departure. In *United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir.1990), we upheld a sentence below the guidelines range despite the district court's specification of an inappropriate ground because the departure was reasonable in light of the two other bases cited. *Cf. United States v. Ramirez*, 910 F.2d 1069, 1071 (2d Cir.) (affirming denial of credit for acceptance of responsibility, despite partial reliance on an improper ground, because another clearly permissible basis existed), *cert. denied*, — U.S. ——, 111 S.Ct. 531, 112 L.Ed.2d 542 (1990).

On the other hand, we took a different approach in *United States v. Joyner*, 924 F.2d 454 (2d Cir.1991), where the district court departed downward for both a permissible and an impermissible reason in sentencing two defendants. Deeming the departures "questionable," we concluded that "we need not adjudicate their reasonableness since the case must be remanded for resentencing with such departures as the District Judge deems warranted with-

out reliance on the impermissible factor." *Id.* at 462.

It is implicit in these cases that a case-by-case approach should be taken with respect to departures. As a general rule, the *Jagmohan* approach seems a proper implementation of the statutory plan for both downward and upward departures. 18 U.S.C. § 3742(e)(3) (1988) provides that in reviewing guideline departures, we must determine whether the sentence

is unreasonable, having regard for—

(a) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(b) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c)....

Similarly, 18 U.S.C. § 3742(f)(2) calls for vacation and remand of a sentence that departs from the guidelines only if it is both "unreasonable" and, in the case of an upward departure, "too high," or, in the case of a downward departure, "too low." Section 3742(e) further directs that we "give due deference to the district court's application of the guidelines to the facts." This framework for appellate review focuses on the reasonableness of the sentence overall, not the correctness of any specific ground for departure that is asserted by the district court. *See United States v. Stephenson,* 921 F.2d 438, 441 (2d Cir.1990) ("this Court reviews upward departures under a reasonableness standard") (citing *United States v. Correa–Vargas,* 860 F.2d 35, 36–37 (2d Cir.1988)); *Hummer,* 916 F.2d at 195 n. 8.

On the other hand, the courts of appeals have statutory authority to remand any matter within their appellate jurisdiction and "require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106 (1988); *see McClain v. United States,* 643 F.2d 911, 914 (2d Cir.) ("we may vacate appellant's entire sentence under the general supervisory powers granted us by 28 U.S.C. § 2106"), *cert. denied,* 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981); *see also*

*United States v. Blackmon,* 839 F.2d 900, 916–17 (2d Cir.1988) (remanding for resentencing where some of concurrently sentenced convictions reversed); *United States v. Sanjuro,* 481 F.2d 638, 639 (2d Cir.1973) (per curiam) (remanding for clarification of sentence imposed). Thus, for example, in cases where the impact of our invalidation of a departure ground is unclear or the sentence imposed by the district court strains the bounds of reasonableness, remand for resentencing may well be warranted. *See Joyner,* 924 F.2d at 462.

■ Applying these standards here, we conclude that affirmance, rather than remand, is appropriate. Wholly apart from the charges against the intended escapees, the six month upward departure in Ahuja's sentence was reasonable in light of his efforts to corrupt police officers with illegal bribes. The district court recognized that Ahuja was not convicted of bribery. Because the police officers were not federal officials, Ahuja could not be charged under the federal bribery statute. *See* 18 U.S.C. § 201 (1988). Nevertheless, as we made clear in *United States v. Kim,* 896 F.2d 678, 684 & n. 3 (2d Cir.1990), misconduct that relates to the offense of conviction, even though not technically covered by the definition of relevant conduct, *see* U.S.S.G. § 1B1.3, may support departure. *See also United States v. Uccio,* 917 F.2d 80, 86 (2d Cir.1990); *United States v. Schaper,* 903 F.2d 891, 899 (2d Cir.1990).

In our estimation, the district court reasonably concluded that the Sentencing Commission did not adequately consider the aggravating conduct here presented— attempts to corrupt law enforcement officials with substantial cash payments— when formulating the offense level for the crime of aiding an escape. Furthermore, the extent of departure was reasonable. The district court compared the twelve to eighteen month range that the Guidelines directed for the escape convictions with the more than three years that Ahuja would have faced for a conviction under the feder-

al bribery statute.[1] In this light, the enhancement of Ahuja's sentence was modest, and a legitimate exercise of the discretion provided by 18 U.S.C. § 3553(b) (1988).

## Conclusion

The judgment of conviction is affirmed.

---

1. As noted earlier, the district court stated at sentencing:

There is the bribery element which went into this offense.... I think the base offense level of the bribery guideline is something in the area of 20 which would start at about 33 months, when one stops to consider the [specific offense characteristics presented here]. Indeed, a federal bribery charge would probably have carried an offense level of 21. A violation of 18 U.S.C. § 201 (1988) has a base offense level of 10, see U.S.S.G. § 2C1.1(a); the fact that more than one bribe was involved requires a two level increase, see id. § 2C1.1(b)(1); and the fact that the amounts to be received totaled $475,000 mandates a nine level enhancement, see id. §§ 2C1.1(b)(2)(A) and 2F1.1(b)(1)(J). Given Ahuja's criminal history level of I, an offense level of 21 would result in a guideline range of 37 to 46 months.