UNITED STATES of America, Appellant,

v.

William BOKUN, Defendant–Appellee.

No. 111, Docket 95–2037.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1995.

Decided Dec. 27, 1995.

Joseph F. Bianco, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Guy Petrillo, Assistant United States Attorney, of counsel), for Appellant.

Austin V. Campriello, New York City (Robinson Silverman Pearce Aronsohn & Berman, Stacy Kellner Rosenberg, New York City, of counsel), for Defendant–Appellee.

Before: NEWMAN, Chief Judge, LUMBARD and VAN GRAAFEILAND, Circuit Judges.

LUMBARD, Circuit Judge:

The Government appeals from a Second Amended Judgment entered on February 3, 1995, in the Southern District of New York (Whitman Knapp, *Judge*), granting William Bokun's petition, pursuant to 28 U.S.C. § 2255, to vacate his sentence and entering a revised sentence which reduced his imprisonment from thirty-five years to twenty-five years.

Seven years before, on February 24, 1988, a jury convicted Bokun of participating and conspiring to participate in a racketeering enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), (d); and of conspiring to distribute cocaine, in violation of 21 U.S.C. § 846. On May 11, 1988, the court sentenced Bokun to fifty years' imprisonment with a recommendation of no parole. Almost three years later, on February 4, 1991, the court granted Bokun's timely motion for a reduction of his sentence, under then-Rule 35 of the Rules of Criminal Procedure,[1] and reduced his sentence to thirty-five years.

Almost four years later, on December 28, 1994, the district court granted Bokun's § 2255 petition seeking a further reduction in sentence; it resentenced Bokun to twenty-five years' imprisonment and withdrew the recommendation of no parole.

On appeal the Government contends that the district court lacked the authority under § 2255 to revise Bokun's sentence. We agree. Accordingly, we reverse and remand for reinstatement of the sentence of thirty-five years' imprisonment entered on February 4, 1991.

I.

On September 17, 1987, William Bokun and nine codefendants were indicted in the Southern District for various crimes committed as members of the Westies, an organized crime group led by James Coonan that had terrorized the Hell's Kitchen section of Manhattan since the mid–1960s. During the four-month trial, the Government called more than seventy witnesses and introduced over three hundred and fifty exhibits which evidenced a multi-million dollar loansharking operation, an illegal gambling business, sev-

---

1. Because the Sentencing Guidelines and the current version of Rule 35 did not apply to conduct occurring before November 1, 1987, Bokun's motion was considered under the prior version of the Rule. Former Rule 35 provided:

(a) **Correction of Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) **Reduction of Sentence.** A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within

120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court, denying review of, or having the effect of upholding, a judgment of conviction or probation revocation....

Fed.R.Crim.P. 35 (1985). The present version of Rule 35 sharply restricts the authority of the district court to revisit a legally imposed sentence. *See* Fed.R.Crim.P. 35.

eral narcotics operations, two schemes to extort money and jobs from labor unions doing business in Hell's Kitchen, and a series of murders. *See United States v. Coonan*, 938 F.2d 1553, 1556–58 (2d Cir.1991) (describing the activities of the Westies), *cert. denied*, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992).

The indictment charged all ten defendants with participating and conspiring to participate in a racketeering enterprise, in violation of RICO, 18 U.S.C. § 1962(c), (d), and alleged thirty-two predicate acts committed by various defendants. Bokun was named in three predicate acts: the murder of Vincent Leone, the murder of Michael Holly, and a conspiracy to distribute cocaine. He was also charged with one count of participating in a conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846.

In 1984, Bokun participated in the murder of Vincent Leone, an officer of the International Longshoremen's Association (ILA), through which the Westies channeled some of the proceeds from their criminal activities. Coonan believed Leone was embezzling Westies money and ordered James McElroy and Kevin Kelly to kill him. On February 4, 1984, McElroy and Kelly accompanied Leone on a ride through New Jersey in Leone's car. When Leone stopped the car to use some cocaine, Kelly fired six shots into his head. McElroy and Kelly then changed clothes at McElroy's girlfriend's apartment. According to the testimony of Francis "Mickey" Featherstone, a former member of the Westies, Bokun met Kelly at a predetermined stop and drove him back to New York City after the murder.

The next year, Bokun avenged the death of his brother John by killing Michael Holly. John Bokun had been killed on March 25, 1977 during an altercation with Holly. On April 25, 1985, Kenneth Shannon, a Westie,

drove Bokun to the corner of 35th Street and 10th Avenue, where they found Holly. Bokun was wearing a disguise consisting of hat, wig, and sunglasses and had applied makeup to his face to cover a birthmark. Bokun got out of the car and fired five bullets into Holly's back. He and Shannon then drove away.

From 1984 to 1986, Bokun, Kelly and Featherstone also distributed wholesale quantities of cocaine from Bokun's grandmother's apartment in Manhattan. In 1985, Bokun married Joann Collins, daughter of Westies Thomas and Florence Collins, and moved to New Jersey. Nonetheless, Bokun continued to operate the cocaine business until his arrest on June 14, 1986. The next day the police seized several items of drug paraphernalia from the Manhattan apartment pursuant to a search warrant.

On October 9, 1987, eight of the ten defendants, including Bokun, went to trial before Judge Knapp and a jury; defendants Kevin Kelly and Kenneth Shannon were fugitives throughout the trial. On February 24, 1988, the jury returned special verdicts on the RICO counts [2] and a general verdict on the remaining counts. The jury found that the Government had proven Bokun's participation in two predicate acts: the murder of Michael Holly and the cocaine conspiracy. Based on the special verdicts, Judge Knapp entered a judgment of conviction against Bokun on both RICO counts. The jury also convicted Bokun of conspiracy to distribute cocaine. All but one of Bokun's codefendants were found guilty of both RICO counts and one or more additional counts.

In its Sentencing Memorandum dated April 18, 1988, the Government offered evidence of two additional crimes in which Bokun had participated: the murder of Joseph Shalhoub on September 13, 1977, and the attempted murder of Salvatore Larca on

---

**2.** Judge Knapp did not ask the jury to render a general verdict on the RICO counts. Instead, he asked the jury to find, through special verdicts, whether the Government had proven beyond a reasonable doubt that an enterprise existed, that each defendant was a member of the enterprise, and that each defendant had participated in the predicate acts attributed to him or her. He then ordered a judgment of conviction against each

defendant of a RICO count only if the jury found that an enterprise existed, that the defendant was a member of the enterprise, and that the defendant had participated in at least two predicate acts. The Government petitioned this Court for a writ of mandamus directing Judge Knapp not to use special verdicts in this manner. We denied the petition. *United States v. Coonan*, 839 F.2d 886, 892 (2d Cir.1988).

May 23, 1983. The Government also urged the court to consider Bokun's role in the murder of Vincent Leone despite the jury's finding that Bokun's involvement had not been proven.

On May 11, 1988, Judge Knapp sentenced Bokun to a total of fifty years' imprisonment, consisting of two consecutive twenty-year terms for each of the RICO counts and a consecutive term of ten years for the narcotics conspiracy. He also recommended that Bokun not receive parole. James Coonan, the leader of the Westies, was sentenced to seventy-five years' imprisonment and a fine of one million dollars; James McElroy, sixty years' imprisonment; Thomas Collins, forty years' imprisonment; Richard Ritter, forty years' imprisonment; Edna Coonan, fifteen years' imprisonment and a fine of two hundred thousand dollars; and Florence Collins, six months' imprisonment and five years' probation. We affirmed the convictions and the sentences. *United States v. Coonan*, 876 F.2d 891 (2d Cir.), *cert. denied*, 493 U.S. 975, 110 S.Ct. 499, 107 L.Ed.2d 502 (1989).

In August 1988, two months after Bokun was sentenced, Kevin Kelly and Kenneth Shannon surrendered. Shannon pleaded guilty to a RICO conspiracy charge, and Judge Knapp sentenced him to twenty years' imprisonment. Kelly went to trial before Judge Knapp and a jury and was convicted on November 16, 1989, of participation and conspiracy to participate in a racketeering enterprise; assault in aid of racketeering; conspiracy to commit and conspiracy to collect extortionate extensions of credit; participation in a narcotics conspiracy; and a conspiracy to obstruct commerce by extortion. On March 26, 1990, Judge Knapp sentenced Kelly to fifty years' imprisonment.

Meanwhile, on March 7, 1990, Bokun had moved for a reduction of his sentence under then-Rule 35 of the Federal Rules of Criminal Procedure. Although Judge Knapp found no changed circumstances warranting a sentence reduction, his "perception of the appropriate allocation of punishment" had been altered by Kelly's trial. In particular, he noted that "Bokun's involvement in Westies activity seem[ed] considerably less than that of ... Kevin Kelly, [who] received the same sentence as he." Judge Knapp also expressed second thoughts about having considered the Vincent Leone murder in setting Bokun's sentence, particularly because the jury had found that Bokun's involvement in that murder had not been proven. Consequently, in an amended judgment filed on February 5, 1991, Judge Knapp reduced Bokun's sentence to thirty-five years in prison with a recommendation of no parole.

Two years later, on June 23, 1993, Judge Knapp reduced Kevin Kelly's sentence from fifty years to forty years, under then-Rule 35, and withdrew his recommendation of no parole. He found that Kelly's "consistently good to outstanding record" in prison merited an adjustment in his sentence. He noted, however, that "the reduction in sentence of ten years is less than the 15–year reduction I granted William Bokun ... because I adhere to my opinion that Kelly was more involved in illegal Westies activities than Bokun and therefore merits a higher sentence."

On July 18, 1994, Bokun filed a petition pursuant to 28 U.S.C. § 2255 seeking a further reduction of his sentence in light of the June 1993 reduction of Kelly's sentence. Bokun argued that the five-year disparity between his thirty-five-year sentence and the revised forty-year sentence imposed on Kelly did not fully reflect the difference in their relative culpabilities. Reducing his sentence to twenty-five years, Bokun contended, would restore the fifteen-year disparity that Judge Knapp had established on Bokun's Rule 35 motion. Bokun also claimed that relief under § 2255 was appropriate in light of his good conduct in prison.

Judge Knapp granted Bokun's § 2255 petition in a second amended judgment filed on December 28, 1994. He acknowledged that granting Kelly's Rule 35 motion disrupted the "table of values" he had established at the outset of the sentencing process. He therefore reduced Bokun's sentence to twenty-five years to restore the fifteen-year disparity between Kelly's sentence and Bokun's sentence and likewise withdrew his recommendation of no parole. He stated:

> I reduced the sentence of Kevin Kelly who by all odds is a more grievous offender

than is Bokun. What the motion before me is [sic] to restore my original plan....

... All I can do is to carry out what I believe is what justice requires in this case and I will grant the motion.

Judge Knapp asserted that this action would be the final sentence correction in his sentencing scheme for the Westies.

## II.

■ We have held on several occasions that a collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *see Napoli v. United States,* 32 F.3d 31, 35 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 900, 130 L.Ed.2d 784 *and cert. denied,* —— U.S. ——, 115 S.Ct. 1796, 131 L.Ed.2d 724, *and cert. denied* —— U.S. ——, 115 S.Ct. 2015, 131 L.Ed.2d 1014 (1995); *Hardy v. United States,* 878 F.2d 94, 97 (2d Cir.1989). The reasons for narrowly limiting the relief permitted under § 2255—a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place—are "well known and basic to our adversary system of justice." *United States v. Addonizio,* 442 U.S. 178, 184 & n. 11, 99 S.Ct. 2235, 2240 & n. 11, 60 L.Ed.2d 805 (1979).

■ Bokun's § 2255 petition is not based on any legal or jurisdictional infirmity. Nor was the court made aware of any new evidence after granting Bokun's Rule 35 motion that justified a further reduction in his sentence. Rather, the judge granted Bokun's petition because he felt that he had disrupted his sentencing plan by reducing Kevin Kelly's sentence.

■ Absent extraordinary circumstances, a defendant has no constitutional or otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her codefendants. *See,*

*e.g., Williams v. Illinois,* 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586 (1970) ("The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences."); *United States v. Gotti,* 791 F.Supp. 380, 382 (E.D.N.Y.1992); *Britton v. United States,* 566 F.Supp. 730, 733–34 (E.D.Tenn. 1981), *aff'd,* 709 F.2d 1499 (6th Cir.1983). *See also United States v. Perez,* 904 F.2d 142, 146 (2d Cir.) ("[D]isparities in sentences among codefendants are generally not reviewable."), *cert. denied,* 498 U.S. 905, 111 S.Ct. 270, 112 L.Ed.2d 226 (1990), *and cert. denied,* 498 U.S. 1124, 111 S.Ct. 1085, 112 L.Ed.2d 1189 (1991). Indeed, we have since held it improper to take a codefendant's sentence into consideration under the Sentencing Guidelines for the purpose of granting a departure from the guideline range. *See, e.g., United States v. Joyner,* 924 F.2d 454, 460–61 (2d Cir.1991). By reducing Kelly's sentence, thereby narrowing the difference between Kelly's sentence and Bokun's sentence from fifteen years to five years, the court committed no constitutional or fundamental error.

Likewise, there was no fundamental error of fact that would render Bokun's sentencing proceeding so "irregular and invalid" that relief under § 2255 would be appropriate. *Addonizio,* 442 U.S. at 186, 99 S.Ct. at 2241 (quoting *United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 19, 59 L.Ed. 129 (1914)). In *Addonizio,* the district court, reacting to a change in Parole Commission procedures, amended a final sentence under § 2255 to ensure that the petitioner would serve no more time in prison than the court had originally contemplated. Although the Third Circuit affirmed, the Supreme Court reversed and directed the district court to reinstate its original sentence. The Court remarked that "there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." *Id.* at 187, 99 S.Ct. at 2241. As the record makes clear, when the judge granted Bokun's Rule 35 motion on February 5, 1991, he had been fully advised at Kelly's trial of any new evidence relating

to Bokun. Indeed, the only circumstance Judge Knapp did not anticipate was that he himself might reduce Kelly's sentence. Having changed his mind as to Kelly's sentence, Judge Knapp could not amend Bokun's final sentence under § 2255. *See United States v. Springs*, 988 F.2d 746, 748 (7th Cir.1993) ("Section 2255 does not authorize judges to revise all decisions that they have come to rue.").

If the court believed that Bokun should not serve his entire thirty-five-year sentence because of his good behavior in prison, it could have so advised the Parole Commission, which has the power to modify pre-Guidelines sentences in view of the prisoner's conduct during incarceration. *See* 18 U.S.C. § 4207 (1984) (repealed as to all offenses committed after November 1, 1987). As a last resort, Bokun may seek a commutation of his sentence from the President by application to the Office of the Pardon Attorney. *See* U.S. Const. art. 2, § 2, cl. 1.

Were Bokun to have his sentence reduced again, other Westies defendants who are still incarcerated would seek similar relief and a realignment of their sentences. The district court would have to reconsider events from nearly a decade ago to reconstruct its original sentencing plan. Any belated change of sentence of one defendant would inevitably lead to applications by other defendants seeking reductions of their sentences.

We vacate the second amended judgment and direct the district court to reinstate the amended judgment reflecting the sentence imposed on Bokun on February 4, 1991.[3]

---

**3.** Our ruling does not preclude Judge Knapp, if he wishes, from withdrawing or modifying his previously expressed recommendation against parole. *See United States ex rel. Robinson v.*

*Israel*, 603 F.2d 635, 638 (7th Cir.1979) (in banc) (parole recommendation "collateral" to imposition of sentence), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980).