**UNITED STATES of America,**
**Appellee,**

**14**

**CHEN WEI REN, aka Ya Pun Jai, Defendant–Appellant.**

No. 00–1422.

United States Court of Appeals, Second Circuit.

Sept. 21, 2001.

Ronald P. Hart, New York, NY, for appellant.

Andrew C. Devore, Assistant United States Attorney, for Mary Jo White, United States Attorney, Southern District of New York; Peter C. Sprung, on the brief, for appellee.

Present JON O. NEWMAN, GUIDO CALABRESI, and ROBERT D. SACK, Circuit Judges.

*SUMMARY ORDER*

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be and it hereby is AFFIRMED.

Chen Wei Ren ("Appellant" or "Chen") appeals from a sentence of ten years' incarceration to be followed by five years of supervised release imposed by the United States District Court for the Southern District of New York (Kevin Thomas Duffy, *J.*) after Chen's guilty plea.

BACKGROUND

Chen was an active member, from 1993 to 1996, of a violent criminal gang, named the Fukienese Flying Dragons (the "Flying Dragons"), that is based in the Chinatown neighborhood of Manhattan. The Flying Dragons were involved in a variety of criminal activities including heroin trafficking, the smuggling of aliens into the United States for fees, extortion, rape, and robbery. As a Flying Dragon, Chen himself had taken part in numerous kidnappings, robberies, and extortions, as well as the smuggling into the United States of illegal aliens who were then held for ransom. In 1996, Chen was arrested on state burglary charges. This federal prosecution followed.

On December 23, 1997, Information S27 95 Cr. 893(JES) was filed against Chen on three counts. Count one charged Chen

with participating in a racketeering enterprise, the Flying Dragons, in violation of 18 U.S.C. § 1962(c). The eight acts of racketeering listed in count one included: the kidnapping of about twenty people from JFK Airport in 1993, the kidnapping of one person in Manhattan in 1993, the extortion of the owners of a Manhattan hair salon in 1993, the repeated extortion of a Manhattan restaurant from 1993 to 1995, the kidnaping of a woman in Brooklyn in 1993, the robbery of six people in Queens in 1994, the robbery of someone in Queens in 1993, and the kidnapping and rape of a woman in Brooklyn in 1994. Count two charged Chen with using and carrying a firearm during and in relation to the violent crimes involved in the racketeering enterprise in violation of 18 U.S.C. § 924(c). Count three charged Chen with conspiring to smuggle aliens into the United States in violation of 18 U.S.C. § 371.

As part of a written cooperation agreement with the government, Chen pleaded guilty before the Honorable John E. Sprizzo, United States District Judge, to all three counts of the Information.[1] In his factual allocution, Chen admitted to membership in the Flying Dragons, to kidnaping twenty individuals (who were then held for ransom in a Chinatown apartment) from JFK airport, and to participating in an effort to smuggle aliens into the country by guarding the aliens in a Chinatown apartment while the Flying Dragons awaited the ransom payments. He also admitted to other violent crimes including robbery and extortion, and admitted to the use of a gun in furtherance of these activities. Judge Sprizzo accepted Chen's guilty plea.

Pursuant to the agreement between Chen and the government, the government requested a downward departure under U.S.S.G § 5K1.1, based on the substantial assistance it had received from Chen. The government deemed Chen's help valuable, but average in relation to the assistance provided by other defendants in the case who had cooperated with the Government. The Probation Office calculated Chen's sentencing range under the Guidelines to be 188 to 235 months' imprisonment. In view of the government's § 5K1.1 motion, the Presentence Report for Chen recommended a sentence of 120 months' imprisonment-reflecting a downward departure of over five and one-half years from the bottom of the range under the Guidelines. The Probation Office noted that Chen's assistance was useful but not extraordinary and that he posed a dangerous threat to society given the violent crimes in which he had participated.

Chen appeared for sentencing before Judge Duffy on May 31, 2000.[2] At sentencing, Chen indicated that he had no objection to the Presentence Report. Defense counsel, citing the value and extent of Chen's cooperation with the government and his ample remorse, requested that

1. In the cooperation agreement, Chen promised to provide truthful information regarding any subjects of interest to the government, to testify at any court proceeding if so requested, and to disclose his criminal activities. The government, in turn, promised to advise the sentencing court of the extent and nature of Chen's assistance. If the government construed Chen's aid as "substantial assistance" the government promised to file a motion pursuant to 18 U.S.C. § 3553(e) and United States Sentencing Guidelines ("U.S.S.G.")

§ 5K1.1, asking the District Court for a downward departure from the otherwise applicable Guidelines range. In the agreement, the parties manifested their understanding that "the sentence to be imposed on Chen Wei Ren is within the sole discretion of the Court."

2. Judge Sprizzo was unavailable and referred the case, along with several other sentencings for members of the Flying Dragons, to Judge Duffy.

Chen's sentence be made to run concurrently with two separate state prison sentences.

Judge Duffy explained that though he would downward depart, he would do so in a limited manner. After reciting the various reprehensible crimes that Chen had committed, Judge Duffy noted that: "Well, the government made a deal with you, and I am willing to go along with that. But to suggest that you are entitled to real consideration is a little bit more than I am willing to buy. You have not shown, at least to my mind, common human compassion at any point." During sentencing, Chen argued that the Presentence Report's description of the rape of a woman in Manhattan incorrectly suggested that he had raped the woman when in fact he had simply stood by and facilitated her rape. Judge Duffy responded: "I will assume that he was the facilitator and not a penetrator. But still just as bad." Judge Duffy then adopted the Probation Department's recommendation, sentencing Chen to a total of 120 months in prison, a sentence the court considered a "substantial departure" from the Guidelines range of 188 to 235 months. This 120 months represented concurrent 60 month sentences for counts one and three and a consecutive 60 month sentence for count two. Judge Duffy expressly declined to rule that the federal sentence run concurrently with Chen's uncompleted state sentences.

This appeal followed.

## DISCUSSION

Chen claims that the district court violated 18 U.S.C. § 3553(a)(6) by sentencing him to ten years of imprisonment despite the substantially lesser sentences imposed

on Chen's co-defendants—who had similar records to Chen and had committed similar crimes. His sentence contravenes the statute, he argues, because it creates "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." [3] In addition, Chen contends that his record militates in favor of a sentence lighter than ten years. In this respect too, Chen maintains that the sentence imposed by the lower court was based on an erroneous interpretation of law or misapplication of the Guidelines. Finally, Chen alleges that the failure of his attorney to highlight the sentence disparity to the court during sentencing resulted in a deprivation of his right to effective assistance of counsel.

Chen focuses on the "trial court's refusal to depart downward" when in fact the trial court did downwardly depart. His appeal, therefore, addresses the extent, not the lack, of the downward departure. As we have held, neither the district court's refusal to depart downward nor the extent of a downward departure is reviewable on appeal. *United States v. Doe*, 996 F.2d 606, 607 (2d Cir.1993) ("[I]t is beyond question that we may not review a district court's discretionary determination not to grant a downward departure. It follows logically, then, that neither may we review, at defendant's request, the *extent* of any departure the court may grant" (citation omitted)); *United States v. Hargrett*, 156 F.3d 447, 450 (2d Cir.1998).

The only exceptions to this general rule are when the refusal to depart downward was based on an erroneous interpretation of law or a misapplication of the Guidelines. *See, e.g., United States v. Moe*, 65 F.3d 245, 251 (2d Cir.1995). Appellant claims that, in light of the sentences im-

---

**3.** Chen recites the sentences received by the other defendants in the Flying Dragons prosecutions, most of whom received approximate-

ly five years, despite similarities to Chen in terms of conduct and criminal record.

posed on his co-defendants, the plain language of 18 U.S.C. § 3553(a)(6), which directs the court to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," along with the oft-repeated goal of the sentencing guidelines of making sentences more consistent, demonstrate the error in the court's decision.

In sentencing Chen, Judge Duffy considered Chen's lack of genuine remorse and the heinousness of his crimes in addition to the recommendation made by the Probation Office. Consideration of these factors was proper under U.S.S.G. § 5K1.1(a) and the sentence easily falls within the court's broad discretion under the Sentencing Guidelines. Chen did receive a longer sentence than some of his co-defendants. This disparity, however, is not the type of "unwarranted sentencing disparit[y]" the Guidelines sought to eliminate, but rather, given the propriety of his sentence under the Guidelines, the type of disparity the Guidelines contemplate. *See United States v. Joyner*, 924 F.2d 454, 460 (2d Cir.1991) ("We think the entire structure of the sentencing guideline system indicates that the Commission fully considered the resulting disparities that would result among co-defendants and was satisfied that the different ranges it prescribed for differences in offense conduct and prior record would produce differences in punishments that the Commission believed were appropriate, rather than the 'unwarranted' disparities that Congress sought to eliminate."). Section 3553(a)(6), accordingly, provides no support for Chen's claim.

We have held, moreover, not only that co-defendant sentence disparities are not unwarranted under the statute, but also that the desire to avoid such potential differences among co-defendants is not a permissible basis for a departure. *See*

*Joyner*, 924 F.2d at 460–61 ("The Congressional objective was to eliminate unwarranted disparities nationwide. An applicable guideline range may seem harsh (or lenient) when compared to that of a co-defendant, but it is the same range applicable throughout the country for all offenders with the same combination of offense conduct and prior record. To reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country."); *United States v. Minicone*, 960 F.2d 1099, 1111–12 (2d Cir.1992) (holding that the district court abused its discretion in granting a downward departure when "motivated by a desire to avoid the unfairness that would result from the "grave disparity" between [the defendant's] sentence and that of his co-defendants"); *accord, United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.1995) ("Absent extraordinary circumstances, a defendant has no constitutional or otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her codefendants. Indeed, we have since held it improper to take a codefendant's sentence into consideration under the Sentencing Guidelines for the purpose of granting a departure from the guideline range." (internal citations omitted)). The disparities among the sentences received by Chen and his co-defendants, accordingly, are not a misapplication of the Guidelines.

Chen claims that his prior attorney failed to represent him adequately because that attorney did not make any arguments during sentencing regarding the sentence disparities among Chen and his co-defendants. Chen maintains that this behavior was "deficient" and prejudiced his defense,

as required by the two prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Given that, as noted above, the judge could not depart on this basis anyway, counsel's failure so to argue does not constitute ineffective assistance of counsel.

We have considered all of Appellant's claims and find them to be without merit. To the extent that Appellant challenges the extent of the lower court's downward departure, this appeal is DISMISSED. In so far as he attacks the adequacy of his trial counsel, the district court's decision is AFFIRMED.